**HART ENTERPRISES INTERNATIONAL, INC., Plaintiff,**

v.

**ANHUI PROVINCIAL IMPORT & EXPORT CORP., Defendant.**

No. 94 Civ. 9107 (LAK).

United States District Court, S.D. New York.

June 12, 1995.

Harvey L. Woll, Ballon Stoll Bader & Nadler, P.C., New York City, for plaintiff.

Richard V. Singleton, II, Cornelius J. O'Reilly, Healy & Baillie, New York City, for defendant.

## AMENDED MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action by a New York textile purchaser against a Chinese supplier for damages for alleged quality deficiencies in the goods and for breach and rescission of a settlement agreement between the parties. The defendant moves to stay the action pending arbitration in the People's Republic of China pursuant to arbitration clauses contained in the confirmations of the sales by defendant to plaintiff. The motion is granted.

### Facts

From August 1991 to April 30, 1992, defendant Anhui Provincial Import & Export Corp. ("Anhui") entered into eighteen contracts to sell ramie/cotton dyed and polyester/viscose dyed yarn. Twelve of the eighteen contracts, all of which were headed "Sales Confirmation," were with Hart Enterprises International, Inc. ("Hart") and signed by Hart's Mr. Haroutiounian. Six nominally were with other entities and signed by a Mr. Lu (the "Lu Contracts"). All eighteen contained an arbitration clause which stated:

"Arbitration: All disputes arising from the execution of, or in connection with the S/C, shall be settled amicably through friendly negotiation. In case no settlement can be reached through negotiation, the case shall then be submitted to The Foreign Trade Arbitration Commission of the China Council For the Promotion of International Trade, Peking, for arbitration in accordance with its provisional rules of procedure. The arbitral award is final and binding upon both parties. The fees for arbitration shall be borne by the losing party unless otherwise awarded."

(*See* Hong Aff. ¶ 6 & Ex. A)

Disputes arose between Anhui and Hart. On September 2, 1993, they entered into a settlement agreement concerning all eighteen contracts that called for Hart to make a series of scheduled payments, which represented a reduction of the amount claimed by Anhui. The agreement further provided that:

"It is clearly understood by both parties that the new prices for the above mentioned invoices are special deduction [*sic*] subject to party B's [Hart's] settlement on above mentioned schedule, and if party B [Hart] fails in fully performing the agreement or in case of partially performed [*sic*], party A [Anhui] is entilted [*sic*] to claims by law all its losses such as interst [*sic*], price difference in selling the goods according to the original contracts."

(*See* Hong Aff. Ex. E ¶ 4)

Hart failed to make the payments required under the settlement agreement. On May 5, 1994, Anhui applied to the China International Economic and Trade Arbitration Commission in Beijing for commencement of arbitration against Hart for breach of contract. The Commission confirmed the application on July 20, 1994 and sent notice of the arbitration to Hart, requesting Hart to appoint an arbitrator and forward its statement of the case. Hart did not respond, so the Commission appointed an arbitrator on Hart's behalf and confirmed that the tribunal had been constituted.

In November 1994, Hart commenced this action against Anhui in the State court, and the case was removed. Also in November 1994, the Commission scheduled an arbitration hearing for February 20, 1995 in Beijing and Hart was so notified. Hart did not respond or otherwise appear. The hearing was adjourned and a new date has not yet been set.

### Discussion

Hart resists arbitration on a number of grounds, all of which lack merit.

1. Hart maintains that a condition precedent to its obligation to arbitrate has not been met in that the arbitration clause states that arbitration is required only "[i]n case no settlement can be reached through negotiation ..." It argues that the dispute was settled by the September 2, 1994 agreement. The argument is rejected.

■ To begin with, the only rational reading of the clause is that the parties were obliged to attempt in good faith to resolve any disputes before resorting to arbitration. That they did. Although those efforts appeared, as of September 2, 1994, to have been successful, the appearance of success proved short-lived. The dispute unmistakably has not been settled and the parties, having pursued a negotiated resolution unsuccessfully, now are free to resort to their arbitration remedies. Indeed, any other construction would permit a party to frustrate the arbitration provision by entering into a sham "settlement," without any intention to perform, and then to avoid arbitration by asserting that the matter had been "settled."

Second, the September 2 agreement, in the second passage quoted above, makes it abundantly clear that the settlement was contingent upon Hart's making the scheduled payments, failing which Anhui is entitled to pursue its remedies under the original contracts. That certainly included arbitration.

Finally, even if Hart's construction were colorable, arbitration nonetheless would be required. "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■ 2. Hart argues next that the September 2 settlement agreement is a contract separate and distinct from the original contracts and that it is not obliged to arbitrate because the dispute concerns alleged breach of the settlement agreement. It is mistaken.

While in some circumstances a party to two separate and distinct contracts, one containing an arbitration clause and the other not, may not be obliged to arbitrate a claim arising under the latter,[1] that principle does not apply here. The claims relating to the settlement agreement, not to mention the settlement agreement itself, are inextricably interrelated to the sales contracts that contain the arbitration clauses. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 251–52 (2d Cir.), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991); *Pervel Industries, Inc. v. T M Wallcovering, Inc.,* 675 F.Supp. 867, 869–70 (S.D.N.Y.1987), *aff'd,* 871 F.2d 7 (2d Cir.1989). Moreover, it is worth noting that the principal claim asserted in Hart's complaint is for breach of the sales contracts themselves. In consequence, all of Hart's claims are arbitrable.

*First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1923–26, —— L.Ed.2d —— (1995), is not to the contrary. The Supreme Court there held that a party cannot be forced to arbitrate an issue unless the party clearly agreed to submit the dispute to arbitration, even where a contract related to the dispute between the parties contained an arbitration clause. In *First Options,* however, the disputes concerned an agreement that was embodied in four separate but related documents. Only one of the four documents contained an arbitration clause. The Kaplans, the parties disputing that their disagreement with First Options was arbitrable, did not sign the one document containing the arbitration clause. The Court held there was insufficient evidence of a clear agreement to arbitrate on the part of the Kaplans despite the related agreement containing the arbitration clause. Here, in contrast, Hart signed sales confirmations containing the arbitration clauses, thus leaving no doubt as to its intention to arbitrate.

3. The third of Hart's contentions rests on the assertion that the six Lu Contracts

---

1. *See Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693 (2d Cir.1965), *cert.* denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966).

were assigned to it. It argues that New York law applies because the case was removed on the basis of diversity of citizenship and that Hart did not assume the assignors' duty to arbitrate when it took the assignments.

■ Most fundamentally, Hart was not an assignee. It was the buyer on the Lu contracts. The six Lu contracts were executed with Henny Trading Co., Lustrade Limited, Hennyco Trading Ltd., and Henny Trading Ltd., all of Nicosia, Cyprus, as buyers. As noted, each was executed for the buyer, by Mr. Lu. Mr. Lu, whichever *nom de commerce* he happened to be using, was Hart's agent. Indeed, Hart's Mr. Haroutiounian on one occasion advised Anhui by letter that if he on occasion did not respond directly to its communications, "it is because I am speaking to Mr. Lu and when he speaks to you he speaks on behalf of me." In consequence, Hart is bound by the arbitration clauses in these six contracts because they were signed on its behalf by Hart's agent as distinguished from its assignor. The Court notes, however, that Hart's argument would be rejected for two reasons even if there were doubt concerning the principal-agent relationship.

First, Hart's premise that New York law applies is incorrect. The People's Republic of China and the United States (and, for that matter, Cyprus) are parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). Article II, Section 3, of the Convention requires courts of contracting States, when seized of an action in a matter in respect of which the parties have agreed to arbitration, to refer the parties to arbitration with exceptions not relevant here.[2] Section 206 of the Federal Arbitration Act, 9 U.S.C. § 206, implements the Convention in this respect. And the Supremacy Clause of the United States Constitution requires the conclusion that federal rather than New York law governs the question whether Hart is obliged to arbitrate its dispute with Anhui. *E.g., Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815

F.2d 840, 845 (2d Cir.1987); *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Filanto, S.p.A. v. Chilewich International Corp.,* 789 F.Supp. 1229, 1234–36 (S.D.N.Y.1992), *appeal dismissed,* 984 F.2d 58 (2d Cir.1993). Hart does not contend that it is not obligated under federal law to arbitrate, even assuming it is an assignee of the six contracts.

Second, and independently conclusive, is the fact that Hart misconstrues New York law. Even if Hart were an assignee of the Lu contracts, it would be bound to arbitrate if "it might be said to have assumed the duty of performance of the contract[s]." *Matter of Kaufman v. William Iselin & Co.,* 272 App.Div. 578, 74 N.Y.S.2d 23, 26 (1st Dep't 1947). This criterion is satisfied if Hart has taken any affirmative action under the assigned contracts to demonstrate an intent to assume their obligations. *See BSI–Banca Della Svizzera Italiana v. Ensra Construction Corp.,* 194 A.D.2d 403, 598 N.Y.S.2d 515 (1st Dep't 1993); *Matter of Keystone Shipping Co. and Texport Oil Co.,* 782 F.Supp. 28, 31 (S.D.N.Y.1992).

Hart here accepted not only the right to receive the goods contracted for by Mr. Lu's various companies, but assumed the obligation to pay for them and made at least some payments under the "assigned" contracts. It entered into a settlement agreement that sought to resolve disputes that arose under them. And it brought this lawsuit to enforce them. In consequence, even if Hart were correct in regarding the contracts as assigned and even if the issue were governed by New York rather than federal law, Hart nevertheless would be bound to arbitrate with respect to the six contracts.

Plaintiff argues that *Lachmar v. Trunkline LNG Co.,* 753 F.2d 8 (2d Cir.1985), is to the contrary. However, in *Lachmar,* the assignee was granted security interests in

---

**2.** The People's Republic and Cyprus have adhered to the Convention only in respect of differences arising out of legal relationships, whether contractual or not, which are considered as commercial under their respective national law.

There is no reason to suppose, and Hart does not suggest, that these contracts for the sale of goods are not considered as commercial under the law of either nation.

the assignor's rights but did not assume any obligations with respect to the contract.

4. Hart finally argues that remitting it to arbitration in Beijing would subject it to undue hardship. The short answer to the assertion is that Hart should have thought of that before it signed contracts specifying arbitration in Beijing in the event of a dispute.

### Remedy

Although the parties have not briefed the issue of remedy, the Court notes that there is some debate as to whether the appropriate disposition in these circumstances is a stay pending arbitration or a final judgment containing a direction to proceed to arbitration. *E.g., Filanto,* 789 F.Supp. at 1241–42. In view of the fact that no useful purpose would be served by a stay, the Court will enter a final judgment containing an appropriate injunction directing the parties to arbitrate in Beijing in accordance with the Convention and the contracts.

Settle judgment on five days notice.

SO ORDERED.