CITY AND COUNTY OF DENVER,
Petitioner,

v.

The DISTRICT COURT IN AND FOR the CITY AND COUNTY OF DENVER, STATE of Colorado; and the Honorable Robert P. Fullerton, one of the Judges thereof, Respondents.

No. 97SA56.

Supreme Court of Colorado,
En Banc.

June 30, 1997.

**1356**

Bookhardt & O'Toole, Kevin J. O'Toole, Dawn P. Bookhardt, Denver, Daniel E. Muse, City Attorney, Lee Marable, Arlene V. Dykstra, Assistant City Attorneys, Denver, for Petitioner.

Berryhill, Cage & North, P.C., Mark W. Williams, James R. Cage, Denver, Leonard, Street & Deinard, Lowell J. Noteboom, Steven R. Lindemann, Minneapolis, MN, for Plaintiff PCL–Harbert.

Berenbaum, Weinshienk & Eason, P.C., James Kurtz–Phelan, Dean Panos, Denver, for Plaintiff Corradini Corporation.

Justice BENDER delivered the Opinion of the Court.

This case involves a dispute between the City and County of Denver and a general contractor hired to construct the terminal building at Denver International Airport. The City and County of Denver (Denver) entered into a series of contracts (the Contract) with PCL–Harbert, a general contractor (PCL), to build the terminal building at Denver International Airport (DIA). The Contract required PCL to perform all the work necessary to complete construction of the terminal building. As part of its mission, PCL subcontracted with Corradini Corporation (Corradini) for the installation of terrazzo flooring in the terminal building.

Disputes arose over work performed under the Contract and the parties engaged in settlement discussions. Thereafter, PCL brought suit against Denver in Denver District Court claiming breach of contract and promissory estoppel and requesting declaratory judgment. In addition, Corradini filed one claim against Denver alleging breach of contract. Denver moved to dismiss PCL's claims for lack of jurisdiction and failure to state a claim, arguing that PCL was required to submit its claims through the alternative dispute resolution (ADR) procedures set forth in the Contract. Denver also sought to stay Corradini's claim pending outcome of the ADR procedures regarding the disputes between Denver and PCL. The district court denied Denver's Motion to Dismiss, and Denver, the petitioner in this court, brought an action under C.A.R. 21 seeking a writ of prohibition to prevent the respondent district court from proceeding further with the case.

Alternative dispute resolution mechanisms are favored in Colorado as a convenient, efficient alternative to litigation. We issued a rule to the district court to show cause because enforcement of non-arbitration ADR procedures in appropriate cases provides guidance and fosters stability for those seeking the benefits of similar dispute resolution procedures in their business dealings. We now make the rule absolute.

The right of parties to contract encompasses the correlative power to agree to a specific procedure for the resolution of disputes. Failure to follow the mandates of a valid ADR clause contravenes Colorado's public policy of supporting ADR as well as frustrates the intent of the parties who originally agreed to an alternate remedy to resolve their disputes. PCL may not avoid a portion of the Contract, the ADR procedure, while retaining the benefits of the Contract. The ADR clause of the Contract is broad in scope, and we apply a presumption in favor of alternative dispute resolution to PCL's claims. We analyze PCL's claims by focusing on their core factual allegations and not on the legal causes of action pled. We conclude that the factual disputes involve either Denver's alleged failure to pay PCL for work performed or overbilling by PCL for which Denver seeks reimbursement. Each claim of PCL concerns the construction of the terminal building at DIA. Hence, we hold that PCL's claims are "disputes regarding the contract" and must be presented according to the ADR procedures set forth in the Contract.

We reverse the district court's denial of Denver's motion to dismiss PCL's claims and

the district court's refusal to stay Corradini's claim pending the outcome of the ADR procedures. We therefore remand with instructions for the district court to dismiss PCL's claims, thereby allowing all of PCL's claims, including the overbilling dispute, to be heard under the ADR procedures. We direct the district court to stay proceedings on Corradini's claim pending determination of all of PCL's claims through the ADR proceedings.

## I. THE FACTS OF THE DISPUTE

We summarize the facts alleged by PCL and Corradini assuming the specific allegations of their amended complaint to be true. *See Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1099 (Colo.1995) (accepting all statements of material fact in complaint as true in determining C.R.C.P. 12(b)(1) motions).

On August 21, 1991, Denver and PCL entered into the Contract for the construction of the terminal building at DIA. The Contract was publicly bid and drafted by Denver. PCL was to furnish "everything necessary and required for the construction of Contract No. F–121B, Terminal Complex Structure and Finishes for the Denver International Airport,"[1] and was paid approximately $315 million. PCL subcontracted with Corradini to install terrazzo flooring in the terminal building. Denver, pursuant to Change Order No. 4, changed the flooring material from terrazzo to a unique granite product which could only be installed by Tecnomaiera SRL (Tecnomaiera), the exclusive producer of this product. When Denver substituted granite for the terrazzo flooring material, PCL was forced to terminate its subcontract with Corradini for the terrazzo flooring and to enter into an agreement with Tecnomaiera to install the granite flooring. The Change Order and the Contract provided that Denver was required to pay the termination costs of both

PCL and Corradini. In October of 1995, Denver, PCL and Corradini negotiated a verbal settlement agreement concerning the termination costs of the terrazzo flooring subcontract whereby Denver agreed to pay $625,000 to Corradini and $12,500 to PCL, plus 6% interest.[2]

Tecnomaiera failed to perform on a portion of its subcontract with PCL and appeared to be insolvent. On June 18, 1993, officials of PCL and Denver met to discuss Tecnomaiera's performance problems. At this time, Denver wanted to meet the airport's initially scheduled opening date of October 31, 1993. Thus, Denver required PCL to continue to work with Tecnomaiera and authorized PCL to advance funds so that Tecnomaiera would be able to fulfill its performance obligation. At this meeting, officials of Denver verbally agreed to reimburse PCL for its funding of Tecnomaiera.[3]

Other disputes occurred between Denver and PCL in the construction of the terminal building. Denver wanted PCL to repair cracks in the granite flooring under a warranty basis, that is, without charge. PCL claimed the Contract required payment for repairs on a cost-plus basis. Acting on information obtained during an audit, Denver notified PCL that it had been overbilled by PCL and had, in turn, overpaid approximately $2.4 million. Denver demanded reimbursement. Because of the alleged overbilling, Denver refused to pay any further monies to PCL and retained approximately $700,000 of funds previously allocated for payment to PCL.

Negotiations over these issues proved fruitless, and on September 13, 1996, PCL filed both a lawsuit against Denver in Denver District Court, which is the case before us, and a petition for administrative hearing pursuant to the ADR procedures set forth in the

---

1. This initial contract was amended three times. Unless expressly stated, the term "the Contract" includes the initial contract and each of its amended versions.

2. Denver disputes the validity of this settlement agreement, pointing out, *inter alia,* that the Denver Charter requires approval of a contract in excess of $500,000 by the City Council, acting pursuant to ordinance, before execution by City

officials. *See* Denver Charter § B 1.12–2(5). However, in analyzing PCL's claims, we accept as true all statements of material fact contained in its amended complaint.

3. Denver denies the existence of this second verbal contract in its pleadings, but we accept as true for the purposes of this opinion the material facts as stated by PCL.

Contract.[4] The amended complaint alleges eight causes of action,[5] some pled in the alternative. PCL alleges: (1) two breach of contract claims involving the October 1995 verbal settlement agreement when representatives of Denver agreed to pay PCL $12,500 and Corradini $625,000 plus interest for the termination of the terrazzo flooring subcontract (second and third claims of the amended complaint); (2) a breach of contract claim because the Contract required that PCL be reimbursed for termination costs due to the cancellation of the terrazzo flooring subcontract (fourth claim); (3) a breach of contract claim based upon Denver's failure to pay the Contract close-out balance which included reimbursement to PCL for monies advanced to Tecnomaiera (fifth claim); (4) a promissory estoppel claim for the monies advanced to Tecnomaiera to enable completion of the granite flooring, based on Denver's verbal promise to reimburse PCL for these advances (sixth claim); (5) a declaratory judgment seeking a judicial interpretation of the Contract to the effect that the Contract required Denver to pay PCL on a cost-plus basis for repair work to the granite floor (seventh claim); and (6) a declaratory judgment seeking a judicial finding that under the terms of the Contract PCL was entitled to bill Denver and be reimbursed for all costs related to Tecnomaiera, including the $2.4 million Denver now claims to have been overbilled (eighth claim). In two of its claims (the third and fourth claims), PCL sought payment on behalf of Corradini as well. Corradini, in the first claim of the amended complaint, sued Denver as an additional party plaintiff claiming that Denver breached its October 1995 verbal settlement agreement by failing to pay Corradini $625,000 for the termination of the terrazzo flooring subcontract.

Denver moved to dismiss PCL's claims for lack of subject matter jurisdiction and failure to state a claim, arguing that the Contract required the parties to submit to alternative dispute resolution. Procedures for dispute resolution are addressed in two separate provisions of the Contract between Denver and PCL. The broader provision, Article VI, provides as follows: "It is agreed and understood by the parties hereto that disputes regarding this contract shall be resolved by administrative hearing under procedures described in Revised Municipal Code § 56–106." Section 56–106 of the Revised Municipal Code of the City and County of Denver (Municipal Code) was promulgated to resolve

---

4. Counsel for PCL told the district court that PCL had complied with the time requirements for filing administrative claims. Counsel stated:

> Your Honor inquired as to whether we had a deadline. We did.... [B]ut to be very clear, we have done only what we felt we needed to do in order to not be foreclosed [from the administrative forum] if a court ultimately determined that that is where we must indeed be.

5. The amended complaint contains the following detailed claims:

> (1) Corradini claims Denver breached its verbal settlement agreement to pay $625,000, plus interest, costs, and fees for termination costs of the Corradini subcontract; (2) PCL claims Denver breached the verbal settlement agreement, alleging Denver owes it $12,500, plus interest, costs and fees; (3) in the alternative to the first two claims, PCL claims Denver breached its verbal settlement agreement, alleging Denver has not paid PCL for its own account in the amount of $637,500, plus interest, costs and fees; (4) in the alternative to the first three claims, PCL claims Denver breached its Contract which provided for payments to PCL for costs and expenses arising out of the cancellation of the terrazzo flooring subcontract; (5) PCL claims Denver breached the Contract, alleging Denver has not paid the Contract balance, including reimbursement for costs related to Tecnomaiera, an insolvent subcontractor, to which PCL is entitled pursuant to the First Amendatory Contract, in the amount of $853,542.42, plus interest, costs and fees; (6) in the alternative to its fifth claim, PCL asserts a promissory estoppel claim against Denver, alleging that after execution of the First Amendatory Contract, Denver promised it would reimburse PCL for costs incurred related to Tecnomaiera, including funds it advanced to Tecnomaiera so that Tecnomaiera could complete its work, in the amount of $795,000, plus interest, costs and fees; (7) PCL seeks declaratory judgment, asking the district court to declare that pursuant to the Contract PCL is entitled to compensation on a cost-plus basis for any repairs it makes to the granite flooring; and (8) PCL seeks declaratory judgment, asking the district court to declare that pursuant to the Contract PCL is entitled to bill Denver and be reimbursed for all costs related to Tecnomaiera, including the $2.4 million Denver alleges was overbilled and for which Denver claims reimbursement.

disputes over sewer rate charges.[6] It provides that any person who disputes a determination made by or on behalf of Denver may submit a written petition to the Manager of Public Works for a hearing. If the petition is granted, the Manager or his appointee conducts a hearing where the parties may present evidence, including sworn testimony, and both parties are given the opportunity to cross-examine witnesses. The rules of evidence and standard of proof correspond to those in civil, nonjury cases in district court. After this hearing, the Manager makes a final determination which is reviewable for questions of law and fact by the Denver District Court by order or writ under C.R.C.P. 106(a)(4) procedures.[7]

The narrower dispute resolution provision of the Contract, Article 19, is entitled "Claims for Adjustments and Disputes." Like Article VI, Article 19 provides for a hearing under section 56–106 of the Municipal Code. However, Article 19 requires a claimant to satisfy additional procedural requirements before receiving a hearing under section 56–106, and Article 19 is only applicable under four enumerated circumstances: (1) when the Resident Engineer denies a change order request; (2) when the contractor disagrees with the Resident Engineer's decision on an equitable change in price or time; (3) when the contractor disputes the Resident Engineer's assessment of liquidated or other damages; and (4) when any other event occurs giving rise to a claim for additional compensation or time.

In its Motion to Dismiss, Denver argued that the district court lacked jurisdiction because PCL was required to submit its claims to the alternative dispute resolution forum as provided by the Contract. In addition, Denver sought a stay of Corradini's claim pending the outcome of the ADR procedures. PCL responded by arguing that only one of its claims [8] was subject to the ADR provisions in the Contract, and that the claims should be kept together and decided in one forum, the district court. The district court denied Denver's motion to dismiss PCL's claims and motion to stay Corradini's claim. The district court held that Corradini asserted a viable non-party claim not governed by the ADR provisions of the Contract. The district court further held that "[PCL's] claims either: 1) fall outside the scope of the general agreement's administrative procedure clause, 2) did not trigger the administrative process, or 3) are inextricably intertwined with claims not subject to administrative process." After denial of its Motion to Dismiss, Denver submitted an answer, affirmative defenses, and counterclaims against PCL for breach of contract, specific performance, indemnification, and unjust enrichment. Ten days after filing this answer and before pre-trial discovery was conducted, Denver filed this petition pursuant to C.A.R. 21.

## II. REASONS FOR THE WRIT

 Before addressing the merits of the issues raised we state our reasons for electing to exercise original jurisdiction in this case. The principles concerning original proceedings under C.A.R. 21 are well-settled. Prohibition is an appropriate remedy "when the trial court has abused its discretion and

---

**6.** Section 56–106 is included in a division of the Municipal Code entitled "Sanitary Sewage Charges and Management of Wastewater."

**7.** C.R.C.P. 106(a) provides:
 (4) Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:
 (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

**8.** PCL concedes that its fourth claim, for breach of contract, falls within the dispute resolution procedures of the Contract. An alternative to the first three claims, this claim is asserted under Article 20 of the Contract. Article 20 provides that in the event of cancellation of a portion of the Contract by Denver for "convenience," the general contractor "shall be entitled to receive reimbursement for the reasonable cost of the Work and a proportion of the bid profit as of the date of termination, including a release of the retainage." PCL claims that because Denver cancelled the subcontract for its convenience, PCL is entitled to recover under this article of the Contract.

where an appellate remedy would not be adequate." *Vaughn v. District Court*, 192 Colo. 348, 349, 559 P.2d 222, 223 (1977). The exercise of original jurisdiction is discretionary and is governed by the circumstances of each individual case. *See Roldan Corp. N.V. v. District Court*, 716 P.2d 120, 122 (Colo. 1986). We have exercised original jurisdiction to address issues of significant public importance which we have not yet examined. *See, e.g., Higgs v. District Court*, 713 P.2d 840, 849 (Colo.1985) (addressing issues relating to the nature and scope of prosecutorial immunity under 42 U.S.C. § 1983); *People v. District Court*, 673 P.2d 991, 995 (Colo.1983) (holding that issues concerning nature of criminal sentencing were of significant public importance for a C.A.R. 21 proceeding); *Sanchez v. District Court*, 624 P.2d 1314, 1316–17 (Colo.1981) (holding that pretrial discovery issue was of significant public importance for an original proceeding).

■ The district court's denial of Denver's motion to dismiss PCL's claims and Denver's request to stay proceedings raises issues of substantial public importance. The General Assembly has provided for a permissive immediate appeal of the denial of a motion to compel arbitration. *See* 13–22–221(1)(a), 6A C.R.S. (1987); *see also Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928, 930 (Colo.1990). This case involves enforcement of ADR provisions not involving arbitration, and the party seeking to compel ADR has no immediate appellate remedy for an abuse of discretion by the district court. Colorado possesses a tradition of supporting alternative dispute resolution mechanisms when agreed to by the parties. *See Firelock Inc. v. District Court*, 776 P.2d 1090, 1099 (Colo.1989) (upholding the Colorado Mandatory Arbitration Act on constitutional grounds). ADR procedures promote settlement of controversies in a manner which avoids the cost of litigation and contributes to the efficient functioning of our judicial system. *See State Farm Mut. Auto. Ins. Co. v. Broadnax*, 827 P.2d 531, 539 (Colo.1992). Enforcement of ADR procedures in appropriate cases provides guidance and fosters stability for those who seek to use similar mechanisms in their business dealings. Appellate review after litigation of PCL's claims

against Denver would be an inadequate remedy for Denver because litigation would not only frustrate the intent of the parties in this case, but would also violate Colorado's strong public policy of encouraging alternative dispute resolution.

## III. PRINCIPLES GOVERNING INTERPRETATION OF ADR CLAUSES

■ The right of parties to contract freely is well developed in our jurisprudence. *See Parrish Chiropractic Ctrs. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1053 (Colo.1994) (citing Colorado cases recognizing a "strong policy of freedom of contract"). The right of parties to contract encompasses the correlative power to agree to a specific ADR procedure for resolving disputes. *See* 1 Martin Domke, *The Law of Practice on Commercial Arbitration* § 11.02 (rev. ed. Supp.1993). As a general rule, courts should follow state law principles governing contract formation to determine whether the parties agreed to submit an issue to alternative dispute resolution. *See* 1 *id.* § 12:01. Thus, to decide whether PCL's claims should be resolved by the district court or by the ADR procedures set forth in the Contract, we must construe the terms of the agreement to which the parties committed themselves in a manner that best effectuates the intent of the parties and allows each party to receive the benefit of the bargain. *See Public Serv. Co. v. United Cable Television, Inc.*, 829 P.2d 1280, 1285 (Colo.1992) (refusing to construe contract entered into by sophisticated parties after full negotiation in a manner which would frustrate the intent of the parties).

ADR clauses in construction contracts typically provide for arbitration. The clauses in this construction contract, however, involve an agreement to resolve disputes using administrative procedures under section 56–106 of the Municipal Code. Our research reveals a limited number of cases where, as here, the parties to a municipal construction contract agreed to resolve disputes through an administrative procedure when they were not required to do so by statute. In *Westinghouse Electric Corp. v. New York City Transit*

*Authority,* 82 N.Y.2d 47, 603 N.Y.S.2d 404, 623 N.E.2d 531 (1993), New York's highest court upheld a contractual ADR provision where the superintendent of the construction project was authorized to decide disputes "related to the contract," and his decision was conclusive, subject to judicial review of whether his determination was "arbitrary, capricious or grossly erroneous to evidence bad faith." *Id.* 603 N.Y.S.2d at 405, 623 N.E.2d at 532. The New York Court of Appeals reasoned:

> Considerable authority thus supports the validity and enforceability of alternative dispute resolution mechanisms, which reflect the informed negotiation and endorsement of parties. It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions. These mechanisms are "well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process." Thus, "[i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective."

> Westinghouse chose, with its business eyes open, to accept the terms, specifications and risk of the bid contract, including the ADR clause....

> Without doubt, Westinghouse understood the implications of the ADR clause prior to undertaking its business and legal risks under the whole of the multimillion dollar agreement. To allow it, after the fact, to secure the assistance and power of the courts to relieve it of a particular procedural provision, while retaining the benefits of the rest of the publicly bid public works contract, is not compelled by our precedents and would have destabilizing commercial law consequences.

*Id.* at 407, 623 N.E.2d at 534 (citations omitted) (alteration in original). Our court of appeals in *Kiewit Western Co. v. City and County of Denver,* 902 P.2d 421, 425 (Colo. App.1994), upheld a similar municipal ADR clause by rejecting a contractor's arguments attacking the ADR clause on due process grounds. Although *Kiewit* and *Westinghouse* concern the validity of an ADR clause in a municipal construction contract rather than the circumstances under which a party to a municipal contract may bypass the ADR provision of the contract by direct suit, the rationale articulated in these cases is instructive.[9]

■ We turn to precedent in arbitration jurisprudence, which we also find helpful in our assessment of the applicability and scope of the ADR clauses in the Contract. Arbitration has long been recognized in Colorado as "a convenient, speedy and efficient alternative to settling disputes by litigation," *Columbine Valley Construction Co. v. Board of Directors, Roaring Fork School District,* 626 P.2d 686, 690 (Colo.1981), and Colorado has joined thirty-four other states in adopting the Uniform Arbitration Act (UAA). *See* §§ 13–22–201 to –223, 6A C.R.S. (1987 & 1996 Supp.) (adopting the UAA in Colorado); *see also* Colo. Const. art. XVIII, § 3. An ADR provision requiring the parties to resolve disputes through an administrative process serves the same public policy interests as does an ADR provision which requires the parties to submit to arbitration. Both ADR provisions allow the parties to agree upon an alternate nonjudicial forum to resolve disputes which is simpler and more expedient than normally encountered in our judicial system:

> [C]ommercial arbitration is a creature of contract. Parties, by agreement, may substitute a different method for the adjudication of their disputes than those which

**9.** Other cases exist in which the parties to a contract employed administrative procedures as a means of alternative dispute resolution when they were not required to do so by statute. *See Yonkers Contracting Co. v. Port Auth. Trans–Hudson Corp.,* 87 N.Y.2d 927, 640 N.Y.S.2d 866, 663 N.E.2d 907 (1996); *Thomas Crimmins Contracting Co. v. City of New York,* 74 N.Y.2d 166, 544 N.Y.S.2d 580, 542 N.E.2d 1097 (1989); *Ardsley*

*Constr. Co. v. Port Auth.,* 54 N.Y.2d 876, 444 N.Y.S.2d 907, 429 N.E.2d 414 (1981); *Tufano Contracting Corp. v. Port Auth.,* 13 N.Y.2d 848, 242 N.Y.S.2d 489, 192 N.E.2d 270 (1963); *Citibank v. Bankers Trust Co.,* 221 A.D.2d 222, 633 N.Y.S.2d 314 (App.Div.1995); *Absher Constr. Co. v. Kent Sch. Dist. No. 415,* 77 Wash.App. 137, 890 P.2d 1071 (1995).

would otherwise be available to them in public courts of law. When they do so, they in effect select their own forum. Their quest is usually for a nonjudicial tribunal that will arrive at a private and practical determination with maximum dispatch and at minimum expense. It has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective.

*In re Siegel,* 40 N.Y.2d 687, 389 N.Y.S.2d 800, 803, 358 N.E.2d 484, 485 (1976) (citations omitted) (holding that arbitration clause which named the attorney for one of the parties as the arbitrator was valid where full disclosure occurred; absent the "real possibility that injustice will result, the courts of this state will not rewrite the contract for the parties"). We acknowledge that ADR clauses requiring arbitration are based on Colorado's statutes (UAA) and those requiring an administrative process possess a different genesis and involve different procedures, but both ADR mechanisms are rooted in similar policies of economy for the parties and judicial efficiency.[10]

## IV. GUIDELINES FOR COURTS IN ADDRESSING ADR PROVISIONS

■ The initial task of the district court is to determine whether the agreement contains a valid and binding ADR clause using traditional principles of contract interpretation. Once validity of the ADR clause is established, the district court must determine who the parties have agreed will decide whether a particular dispute falls within the scope of the ADR clause, the ADR decision-maker or the court. *See First Options, Inc. v. Kaplan,* 514 U.S. 938, 939, 115 S.Ct. 1920, 1921, 131 L.Ed.2d 985 (1995) (interpreting the Federal Arbitration Act). If the agree-

ment is silent or ambiguous on this question, then the determination should be made by the court, not the ADR decision-maker; otherwise, "unwilling parties [might be forced] to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide." *Id.* at 945, 115 S.Ct. at 1924.

■ If it is found that the district court will make the determination, the next question which the district court must address is "whether a particular merits-related dispute is ... within the scope of a valid [ADR] agreement." *Id.* at 944–45, 115 S.Ct. at 1924. Because alternative dispute resolution is governed by contract principles, the scope of an ADR agreement must "faithfully reflect the reasonable expectations" of the parties. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 28 (2d Cir.1995) (broad arbitration clause in dyeing agreement did not include defamation claim since there was nothing in the agreement which indicated that parties would have reasonably expected that the ADR clause would extend to this type of claim).

■ Under the Federal Arbitration Act (FAA), the federal counterpart to the UAA, courts resolve any doubts regarding the scope of arbitrable issues in favor of arbitration and apply a presumption of arbitration because of the strong public policy of encouraging alternative dispute resolution. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). Similarly, Colorado has followed federal precedent to determine the scope of an arbitration clause under the UAA by requiring the district court to apply the presumption favoring arbitrability and to prohibit litigation "unless the court can say with 'positive assurance' that the arbitration provision is not susceptible of any interpretation that encom-

---

**10.** For clarification, we mention an additional background point: this case does not involve the doctrine of exhaustion of administrative remedies, which is statutory in nature. *See Horrell v. Department of Admin.,* 861 P.2d 1194, 1197 (Colo.1993) ("Where administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority."). Rather, this case involves the applica-

tion of ADR procedures which were bargained for by the parties at the time they entered into the Contract and which are required by the Contract. Confusion about this point may occur because the ADR provisions adopt an administrative process based upon the Municipal Code. We emphasize that the ADR provision in this case derives its force solely from the parties' agreement to use the Municipal Code as an ADR mechanism.

passes the subject matter of the dispute." *Jefferson County Sch. Dist. v. Shorey,* 826 P.2d 830, 840 (Colo.1992) (quoting *AT & T Techs. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)).[11] This positive assurance test is applied in "gray areas" which require contract interpretation by the court to determine the parties' intentions. 1 Domke, *supra,* § 12.03.

As part of the process of determining whether a specific dispute falls within the scope of the ADR clause, the district court must ascertain the reasonable expectations of the parties by applying the language chosen by the parties for the ADR clause to the factual nature of the dispute. An ADR clause may be very expansive or limited to a few subject matters. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Stein,* 886 P.2d 326 (Colo.App.1994) (disputes over anti-stacking provisions of insurance policy were not encompassed by narrow, unambiguous arbitration clause), *appeal on other grounds after remand,* 924 P.2d 1154 (Colo.App.1996), *aff'd,* No. 96SC283, —— P.2d —— (Colo. June 30, 1997). A broad or unrestricted arbitration clause makes the "strong presumption favoring arbitration [apply] with even greater force." 1 Domke, *supra,* § 12.05.

The factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the ADR clause. Tort claims and claims other than breach of contract claims are not necessarily excluded from ADR. *See Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382, 384 (11th Cir.1996); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir.1993) ("[A] party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'"); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims 'touch matters' covered by the parties'

sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them."). Creative legal theories asserted in complaints should not be permitted to undermine the presumption favoring alternative means to resolve disputes.

Thus we hold that the district court must compel ADR "unless the court can say 'with positive assurance' that the [ADR clause] is not susceptible of any interpretation that encompasses the subject matter of the dispute." *Shorey,* 826 P.2d at 840. We also hold that the district court must accord the parties a presumption in favor of ADR and must resolve doubts about the scope of the ADR clause in favor of the ADR mechanism.

Summarizing, we hold that the district court, when faced with a party seeking to bypass an ADR provision of its agreement, must adhere to the following guidelines. First, the court must determine whether the ADR agreement is valid and binding. Second, the court must determine whether the agreement provides for the court or the ADR decision-maker to decide whether the dispute falls within the scope of the ADR clause. If the agreement is silent or ambiguous on this issue, then the court, rather than the ADR decision-maker, must determine the scope and applicability of the ADR clause. Third, the court must determine whether the parties intended for the dispute to fall within the scope of the ADR clause. This third question requires the court to review the wording of the ADR clause to determine if it encompasses the factual basis of the dispute. In analyzing the factual nature of the claim, the district court must be guided by the underlying factual claims and not the legal causes of action pled. The court must also accord a presumption in favor of the ADR mechanism and resolve doubts regarding the scope of an ADR clause in favor of the ADR procedures.

## V. APPLICATION OF THE GUIDELINES TO THIS CASE

Having set forth the appropriate guidelines we now apply them to the present

11. To clarify, we emphasize that this case does not involve the issue of federal preemption of state statutes governing arbitration, a matter which this court has never addressed. Our reliance on the FAA for guidance in this case is not intended to undermine our decisions in *Colorado Permanente Medical Group, P.C. v. Evans,* 926 P.2d 1218, 1228 (Colo.1996) and *Lambdin v. District Court,* 903 P.2d 1126, 1131 (Colo.1995).

case. Our first determination is whether the Contract contains a valid and binding ADR clause. We acknowledge that the ADR clause provides for a Denver official, rather than a decision-maker unrelated to either party, to determine the merits of PCL's claims. However, this will not render a dispute resolution clause invalid so long as the ADR clause provides for judicial review of the official's determination. *See Kiewit Western Co. v. City and County of Denver*, 902 P.2d 421, 424 (Colo.App.1994) (upholding a virtually identical ADR clause in a contract for the construction of the runways at DIA because it provided for judicial review and because it was "entered into voluntarily by competent and informed parties"). We also note that absent fraud or bad faith, federal courts have upheld the validity of ADR clauses in federal construction contracts which incorporated administrative review procedures. *See, e.g., United States v. Moorman*, 338 U.S. 457, 462, 70 S.Ct. 288, 291, 94 L.Ed. 256 (1950) (holding that Secretary of War's resolution of a government construction contract dispute was binding). PCL does not allege fraud or bad faith with respect to either the Contract or the ADR clause.

■ Significantly, the parties do not contest the validity or the binding nature of Article VI or Article 19. The ADR provisions of the Contract were part of the original agreement which was entered into voluntarily and knowingly by the parties. In accordance with the decision of the court of appeals in *Kiewit*, we hold that the ADR provisions in the Contract are valid and binding.

Our second consideration under the guidelines is to determine who should decide whether PCL's claims fall within the scope of the ADR clause in the Contract. The Contract is silent on the question of whether the district court or the ADR decision-maker should decide whether PCL's claims fall within the reach of the ADR clause. Hence, the district court must make this determination, which it did in this case.

Our third consideration is whether the district court abused its discretion in finding that PCL's claims fall outside the scope of the ADR provisions of the Contract. The Contract contains two ADR clauses, Article VI and Article 19. Article VI contains the following language:

> DISPUTES: It is agreed and understood by the parties that *disputes regarding the contract shall be resolved* by administrative hearing under procedures described in Revised Municipal Code Section 56–106.

(Emphasis added.) Article 19 also provides for an administrative hearing under section 56–106 procedures. Article 19 differs in that it is only triggered by specific types of claims and that it requires a claimant to satisfy additional procedural requirements. Denver asserts that the scope of Article VI is broad, and that PCL's claims are subject to the ADR clause in Article VI. PCL argues that Article 19 governs this dispute and that Article VI is irrelevant. PCL further argues that even if Article VI governs this dispute, its claims do not fall within the reach of Article VI because they do not "regard the contract." We address PCL's arguments in turn.

## A. ARTICLE VI GOVERNS

Initially, PCL argues that because Article 19 and Article VI both provide for a hearing under section 56–106, and because Article 19 requires the claimant to satisfy additional procedural requirements, that Article VI was intended to come into play only after the claimant completes the detailed administrative procedures in Article 19. According to PCL, unless a claimant's disputes fall within one of the four circumstances enumerated in Article 19, they are not subject to Article VI procedures. PCL argues that most of its claims do not fall within the four situations in Article 19, and therefore, its claims were not intended to be subject to Article VI. We disagree.

■ To determine the intent of the parties at the time they agreed to the ADR clauses in the Contract, we must construe the Contract as a whole and effect must be given to every provision, if possible. *See Gandy v. Park Nat'l Bank*, 200 Colo. 298, 300, 615 P.2d 20, 22 (1980). If, as PCL suggests, Article VI were limited by the specific disputes described in Article 19, then Article VI would

be unnecessary and would add nothing to the Contract. Article 19 is not inconsistent with Article VI because Article 19 requires additional procedures for specific types of claims. The plain language of the Contract provides that Article VI governs disputes "regarding the contract," which is not limited to claims under Article 19. We therefore analyze only the application of Article VI, which is much broader than Article 19, to the specific legal arguments advanced by PCL and take no position as to whether some of PCL's claims might be advanced under Article 19 of the Contract.

■ PCL also argues that Article VI is inapplicable to the claims because Article VI provides for dispute resolution under section 56–106, which was designed to resolve disputes over sewer and wastewater management charges. According to PCL, this ADR provision was not intended to apply to the claims asserted in the complaint because these disputes are not remotely concerned with sewer and wastewater management charges. We disagree.

■ Parties to a contract have the freedom to select ADR procedures contained in a municipal code promulgated to address disputes other than the type at issue in their contract. We note that *Kiewit* involved a virtually identical ADR clause in a municipal contract concerning the construction of DIA's runways, a matter which also is unrelated to disputing sewer or wastewater management charges.

## B. THE SCOPE OF ARTICLE VI

The ADR clause in this case states that the ADR procedures shall resolve "disputes regarding the contract." PCL asserts that its claims do not fall within Article VI's intended scope because the claims do not "regard the contract."

■ We have been unable to find other cases construing the phrase "regarding the contract" in an ADR context other than *Kiewit. Kiewit* held that additional requests for compensation by the contractor for de-

sign errors, differing site conditions, and a change in time of performance represented "disputes regarding the contract." *Kiewit,* 902 P.2d at 425. By ruling that the claims of the contractor were included within the ambit of the ADR clause, this decision is consistent with cases from other jurisdictions interpreting the similar phrase "relating to the contract" in arbitration clauses as being broad rather than restrictive. *See Pervel Indus., Inc. v. TM Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir.1989); *PSI Energy, Inc. v. Amax, Inc.,* 644 N.E.2d 96, 100 (Ind.1994) (typical American Arbitration Association clause containing the words "arising out of or relating to the agreement" is "broad"); *Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc.,* 240 N.J.Super. 370, 573 A.2d 484, 486 (App.Div.1990) ("An arbitration provision covering claims 'relating to' a contract is broader than one which covers claims merely arising out of a contract."). Webster's Third New International Dictionary (3d ed.1986) confirms that *regarding* has the same or similar meaning as *relating* (*regarding* means "with respect to; concerning," *id.* at 1911; *concerning* means "related to; regarding," *id.* at 470; *related* means "having a relationship or connected by an established or discoverable relation," *id.* at 1916; and *arises* means "to originate from a specific source as in 'arising out of,' " *id.* at 117). Hence, we follow the reasoning of the court of appeals in *Kiewit* and hold that the ADR clause of this Contract is a broad clause intended by the parties to encompass any dispute between PCL and Denver regarding the subject matter of the Contract, that is, the work necessary to construct the terminal building at DIA.

To determine whether PCL's claims are disputes regarding the subject matter of the Contract, we review the claims in terms of their factual content and not by the labels attached to the causes of action as pled.[12] The goal is to focus upon the basic factual nature of the disputes, keeping in mind the sweep of the ADR clause in the Contract and the presumption favoring ADR. Denver char-

---

**12.** We note that at oral argument in district court, counsel for PCL stated: "[T]he principal issues here, the big dollars, are within the prov-

ince of this Court and have been framed by us intentionally to be within the province of this Court."

acterizes these disputes as a failure to pay PCL and an overpayment by Denver to PCL. PCL argues that all but one of the claims [13] fall outside the scope of the ADR clause in the Contract on a number of grounds. We agree with Denver's characterization.

PCL argues that its claims regarding breach of the verbal settlement agreement fall outside the scope of the ADR clause because the settlement agreement exists separate and apart from the Contract. Under the facts asserted by PCL, however, the verbal settlement agreement says nothing with respect to direct judicial enforcement for a breach. In the absence of an expression of intent regarding an enforcement remedy contained in a settlement agreement, we turn to the ADR clause of the underlying or master contract to determine whether the settlement agreement is subject to that clause. The question becomes, does the settlement agreement regard the Contract, or, as PCL alleges, does it exist separate and apart from the Contract?

The breach of settlement agreement involving the termination costs of the terrazzo flooring subcontract regards the subject matter of the Contract. Article 20 of the Contract permits Denver to cancel a portion of the performance of the work under the Contract at Denver's "convenience," that is, without just cause. Article 20 also provides a remedy for PCL to receive reasonable compensation for the work performed and a proportion of the bid profit as of the date of termination. *See supra* note 8. In addition, Change Order No. 4, issued pursuant to the Contract, specifically provides for payment to PCL of all costs associated with termination of the terrazzo flooring subcontract and also is the subject matter of the claim conceded to be subject to ADR. Therefore, the Contract on its face addresses the factual basis for this claim and establishes that this claim by PCL was an issue explicitly contemplated by the parties when they agreed to the Contract.

We note that in the arbitration setting, other courts have compelled ADR because a settlement agreement "related to" the parties' agreement. *See Hart Enters. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*, 888 F.Supp. 587, 589 (S.D.N.Y.1995) ("Claims relating to the settlement agreement, not to mention the settlement agreement itself, are inextricably interrelated to the sales contracts that contain the arbitration clauses."); *see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 251–52 (2d Cir.1991) (holding that a collateral agreement between the parties had a direct relationship to the original contracts between the parties and compelling ADR where the clause included the phrase "related to"); *Pervel*, 871 F.2d at 8 (same); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 44–45 (3d Cir.1978) (breach of oral agreement subject to arbitration because it is a dispute "arising out of and about" the original agreement).

Here, the alleged verbal settlement agreement concerns the subject matter of the Contract, involves specific terms of the Contract, and arose out of the operation of the work performed under the Contract. Absent the Contract, the settlement agreement has "no starting point, no finishing point and no subject matter." *Pervel*, 871 F.2d at 9. Thus, the verbal settlement agreement and its alleged breach does not exist separate and apart from the Contract. The breach of the verbal settlement agreement represents a dispute "regarding the contract."

As an alternative cause of action, PCL argues that the verbal agreement by Denver to reimburse it for funds advanced to Tecnomaiera constitutes a promissory estoppel claim which, by its nature, is separate from the Contract, and therefore the ADR clause does not apply. We are not persuaded because the facts of the promissory estoppel claim involve the identical facts claimed to support PCL's second claim for breach of the settlement agreement. Other jurisdictions have compelled arbitration where one party asserted promissory estoppel claims and the relevant agreement contained a broad arbitration clause. *See Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir.1975) (holding that broad ADR

---

13. The fourth claim is pled in terms of a breach of the Contract which PCL concedes is subject to the ADR clause and involves the termination costs of the terrazzo flooring subcontract.

clause covered contract-generated or contract-related disputes however labeled and that it is immaterial whether the claims were in contract or in tort); *Ripmaster v. Toyoda Gosei, Co.*, 824 F.Supp. 116, 118 (E.D.Mich. 1993) (holding that equity claims such as promissory estoppel were covered by broad ADR clause and that plaintiff could not evade ADR clause by "artful pleading"). We conclude that PCL's claim involving promissory estoppel is a dispute "regarding the contract."

Next, PCL argues that the contract balance claim is not governed by the ADR clause for two reasons. First, it asserts that this claim is not triggered by any of the circumstances described by Article 19 of the Contract. However, as explained earlier, in section V. A., *supra*, Article VI, the broad clause, must be applied to this claim.

Second, PCL posits that "arbitration is not a condition precedent to legal action where the question involved is merely an obligation to pay a liquidated sum of money." To support its position, PCL asserts that the balance on the Contract is an amount "owed by operation of law," citing *Black's Law Dictionary* which defines the term "liquidated" as an amount agreed upon by the parties *or owed by operation of law. See Black's Law Dictionary* 930 (6th ed.1990); *see also Colorado Real Estate & Dev., Inc. v. Sternberg*, 164 Colo. 184, 186, 433 P.2d 341, 342 (1967) (arbitration was not a condition precedent to right of legal action where a party to a contract simply demanded balance owing on that contract).

■ We are not persuaded by the cases cited by PCL because these cases involved facts where a specific sum was owed, acknowledged, and *not disputed* by the debtor before suit was filed. *See Sternberg*, 164 Colo. at 187–88, 433 P.2d at 342–43; *Fravert v. Fesler*, 11 Colo.App. 387, 387–88, 53 P. 288, 288–89 (1898). Differences between an amount acknowledged to be due and the amount claimed is a "dispute" for purposes of a contractual ADR clause. *See Christensen v. Flaregas Corp.*, 710 P.2d 6, 8 (Colo.App. 1985) (compelling arbitration because a dispute existed as to the amount of money owed).

■ Here, PCL claims Denver owes a balance of $853,542.42, and Denver claims that PCL owes Denver a $2.4 million refund because of overbilling. Thus, we conclude a dispute exists as to the amount of money owed on the Contract and the contract balance claim is subject to the ADR provision of the Contract.

■ PCL's seventh and eighth claims seek declaratory judgment relief. One claim asserts that the Contract requires payment for repair work on the granite flooring on a cost-plus basis. The second claim seeks a judicial finding that under the terms of the Contract PCL was entitled to bill Denver and be reimbursed for all costs related to Tecnomaiera, including the $2.4 million Denver now claims to have been overbilled. It is apparent that both declaratory judgment claims involve interpretations of the Contract. Hence, the ADR procedures apply.

Summarizing, each claim advanced by PCL touches on the Contract and involves a dispute, either a failure to pay by Denver or an overbilling by PCL, between Denver and PCL concerning work necessary to construct the terminal building at DIA. Applying a presumption favoring ADR which has great force in this case because the ADR clause of the Contract is broad, we conclude that all of PCL's claims, including the question of overbilling, are "disputes regarding the contract" and must be resolved by the ADR procedures agreed to by the parties. Thus, the district court abused its discretion in finding that PCL's claims fall outside the scope of the ADR provision of the Contract.

## VI. WAIVER AND COUNTERCLAIMS

PCL and Corradini argue that Denver waived its rights to use ADR procedures on all claims by the act of filing counterclaims in district court. We disagree.

■ Generally, when a party takes inconsistent actions with respect to its rights to arbitrate, that party waives such rights. *See Cordillera Corp. v. Heard*, 200 Colo. 72, 612 P.2d 92, 93 (1980) (finding that actions of the parties, including filing of answer, amendment of pleadings, and unsuccessful motions

for summary judgment were sufficient to waive arbitration clause). Waiver depends upon the facts and circumstances of each case. "[T]he mere filing of a counterclaim does not waive" arbitration. *Reid Burton Const., Inc. v. Carpenters Dist. Council,* 614 F.2d 698, 702 (10th Cir.1980) (defendants waived right to arbitration because they had participated in numerous hearings, pretrial conferences, motions, and other proceedings before seeking arbitration).

We have not extensively examined what actions constitute waiver by a party seeking to invoke ADR. Borrowing from precedent in other jurisdictions, we hold that to determine whether parties have acted inconsistently with their contractual right to seek ADR, the district court should consider the following factors: (1) whether the party has actually participated in the lawsuit or has taken other action inconsistent with his rights, *see Cornell & Co. v. Barber & Ross Co.,* 360 F.2d 512, 513 (D.C.Cir.1966); (2) whether litigation has substantially progressed by the time the intention to arbitrate was communicated by the party moving to dismiss, *see Barber & Ross Co. v. Cornell & Co.,* 242 F.Supp. 825, 826 (D.D.C.1965), *aff'd,* 360 F.2d 512 (D.C.Cir.1966); (3) whether there has been a long delay seeking a stay and whether the defendant filed counterclaims without asking for a stay, *see American Locomotive Co. v. Chemical Research Corp.,* 171 F.2d 115, 121 (6th Cir.1948); (4) whether a request to compel arbitration was initiated close to trial, *see General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.,* 427 F.2d 924, 928 (5th Cir.1970); (5) whether the party seeking arbitration has taken unfair advantage of discovery proceedings which would not have been available in arbitration, *see Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968); and (6) whether the other party was affected, misled, or prejudiced by the delay, *see id.* at 696 n. 7.

Here, Denver filed a motion to dismiss and a motion to stay the proceedings before it filed its answer. No discovery was conducted and Denver filed an answer and counterclaims only after the district court denied its motions to dismiss and to stay proceedings. In its answer, Denver asserted a number of affirmative defenses, including lack of subject matter jurisdiction by the court and failure of PCL to exhaust the ADR procedures in the Contract. Ten days after filing its answer and counterclaims, Denver filed a Petition for a Writ of Prohibition and requested to stay the proceedings. There exists no showing in the record before us of prejudice to the objecting parties, PCL and Corradini. Thus, Denver, by filing its answer and counterclaims after denial of its motion to dismiss, did not waive its right to seek ADR procedures under the Contract.

## VII. THE INTERTWINING DOCTRINE

PCL and Corradini argue that even if some of their claims are subject to the ADR clause of the Contract, those claims are inextricably intertwined with claims that are not subject to the Contract's dispute resolution procedures. The district court agreed, stating as one of its grounds for denying Denver's motion to dismiss, that plaintiff's claims "[a]re inextricably intertwined with claims not subject to the administrative process."

The purpose of the intertwining doctrine is to prevent inconsistent determinations by different forums. *See Sandefer v. District Court,* 635 P.2d 547, 549 (Colo.1981) *overruled in part on other grounds by Sager v. District Court,* 698 P.2d 250 (Colo.1985). Application of the intertwining doctrine:

> [I]nvolves an analysis of the legal and factual issues relative to each of the factual allegations in the complaint. The court will consider whether the arbitrator would be required to "review the same facts needed to establish the . . . [non-arbitrable claim]". . . . If the factual determinations and legal conclusions are inextricably intertwined, then the court must not sever the action. To hold otherwise would risk inconsistent determinations and could result in the arbitrator's infringing upon the court's duty to decide the [non-arbitrable claim]. . . .

*Lawrence St. Partners, Ltd. v. Lawrence St. Venturers,* 786 P.2d 508, 511 (Colo.App.1989) (citation omitted). In *Sandefer,* we held that it is the court's duty to decide if it is "impractical if not impossible to separate out non-

arbitrable ... claims from arbitrable ... claims." *Sandefer*, 635 P.2d at 550. Because all of PCL's claims are encompassed by the ADR clause of the Contract, there is no danger of inconsistent determinations. Thus, we conclude the district court abused its discretion by applying the intertwining doctrine to this case.

## VIII. STAY OF SUBCONTRACTOR'S CLAIM PENDING ARBITRATION

■■■■■■ Last, we address the remaining claim for breach of the verbal settlement agreement filed by Corradini. In the arbitration context, a valid, enforceable arbitration clause divests the trial court of jurisdiction over all the questions that are submitted to arbitration, pending the conclusion of arbitration. Under the UAA the district court is required to stay a civil action pending an arbitrator's decision. *See* § 13–22–204(4), 6A C.R.S. (1987). The UAA contemplates that some causes of action may be severable from those which must be arbitrated.[14]

While there exists no comparable statute for the ADR procedures in this Contract, Denver filed a motion to stay proceedings together with its motion to dismiss following the accepted UAA practice and procedure.

■■■■■■ A non-party to an agreement containing an ADR clause may not be compelled to use the ADR procedures. *See Youmans v. District Court*, 197 Colo. 28, 30, 589 P.2d 487, 488 (1979). Because Corradini was not a party to the Contract between Denver and PCL, Corradini's breach of settlement agreement claim exists independently from the Contract and Corradini may not be compelled to comply with the ADR procedure. We note, however, that the claims asserted by PCL on behalf of Corradini are subject to the ADR procedures.

To permit Corradini to litigate its claim before the administrative procedures have run their course may result in inconsistent determinations. Hence, we hold the district court abused its discretion in denying Denver's motion to stay the proceedings on Corradini's claim pending the outcome of ADR procedures of PCL's claims.

## IX. CONCLUSION

Alternative dispute resolution mechanisms are favored in Colorado as a convenient, efficient alternative to litigation. The right of parties to contract encompasses the correlative power to agree to a specific procedure for the resolution of disputes. Enforcement of non-arbitration ADR procedures provides guidance and fosters stability for those seeking the benefits of ADR in their business dealings. Failure to follow the mandates of a valid ADR clause contravenes Colorado's public policy of supporting ADR as well as frustrates the intent of the parties who initially agreed to an alternate remedy to resolve their disputes. PCL may not avoid a portion of the Contract, the ADR procedure, while retaining the benefits of the Contract. The ADR clause of the Contract is broad in scope, and we apply a presumption in favor of alternative dispute resolution to PCL's claims. We analyze PCL's claims by focusing on their core factual allegations and not on the legal causes of action pled. We conclude that the factual disputes involve either Denver's alleged failure to pay PCL for work performed or overbilling by PCL for which Denver seeks reimbursement. Each claim of PCL concerns the construction of the terminal building at DIA. Hence, we hold that PCL's claims are "disputes regarding the contract" and must be presented according to the ADR procedures set forth in the Contract.

We reverse the district court's denial of Denver's motion to dismiss PCL's claims and the district court's refusal to stay Corradini's claim pending the outcome of the ADR procedures. We therefore remand with instruc-

---

14. Section 13–22–204(4), 6A C.R.S. (1987), provides:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section, or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such a stay.

tions for the district court to dismiss PCL's claims, thereby allowing all of PCL's claims, including the overbilling dispute, to be heard under the ADR procedures. We direct the district court to stay proceedings on Corradi-ni's claim pending determination of all of PCL's claims in the ADR proceedings.