**PERVEL INDUSTRIES, INC.,**
Petitioner–Appellee,

v.

**T M WALLCOVERING, INC.,**
Respondent–Appellant.

**No. 61, Docket 88–7100.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1988.
Decided March 22, 1989.

Leo G. Kailas, New York City (Milgrim Thomajan & Lee, P.C. and Karen I. Hansen, New York City, of counsel), for respondent-appellant.

Donald L. Kreindler, New York City (Kreindler & Relkin, P.C. and Brett J. Meyer, New York City, of counsel), for petitioner-appellee.

**8**

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

T M Wallcovering, Inc. appeals from an order of the United States District Court for the Southern District of New York (Edelstein, J.) staying an action brought by T M against Pervel Industries, Inc. in Tennessee state court and directing the parties to proceed to arbitration. *See* 675 F.Supp. 867. We affirm.

Pervel is a manufacturer of fabrics and wallcoverings. T M is a distributor of Pervel's products. During the years that the parties dealt with each other, "numerous orders" were placed by T M with Pervel. In each instance, Pervel followed its standard practice of returning a printed confirmation form, which contained the terms of the transaction, including a description of the product sold, the quantity, the price, the terms of payment, the routing and the consignee. The document was self-styled a "contract" and provided on its face that it was subject to the terms therein stated and those on the reverse side "including the provision for arbitration."

The document also provided on its face that it should become a contract for the entire quantity specified when signed and returned, or "(b) when Buyer receives and retains this without objection for ten days or (c) when Buyer accepts delivery of all or any part of the merchandise ordered hereunder...." Although T M's president avers that a "large majority" of these confirmation forms were not signed and returned to Pervel, it is undisputed that some of them were. Seven such documents, several of which were signed by T M's president, are included in the record on appeal. We agree with the district court that there was a binding arbitration agreement between the parties.

Where, as here, a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845–46 (2d Cir.1987); *Manes Organization, Inc. v. Standard Dyeing & Finishing Co.*, 472 F.Supp. 687, 690–91 n. 4 (S.D.N.Y. 1979); *In re Arbitration Between Baroque Fashions, Inc. and Scotney Mills, Inc.*, 19 A.D.2d 873, 874, 244 N.Y.S.2d 118 (1963) (mem.). This is particularly true in industries such as fabrics and textiles where the specialized nature of the product has led to the widespread use of arbitration clauses and knowledgeable arbitrators. *See, e.g., In re Arbitration Between Helen Whiting, Inc. and Trojan Textile Corp.*, 307 N.Y. 360, 366–67, 121 N.E.2d 367 (1954); *In re Arbitration Between Gaynor–Stafford Industries, Inc. and Mafco Textured Fibers*, 52 A.D.2d 481, 485, 384 N.Y.S.2d 788 (1976); *Imptex Int'l Corp. v. Lorprint, Inc.*, 625 F.Supp. 1572 (S.D.N.Y. 1986). Thus, the arbitration clause in the instant case provides that the arbitration shall proceed "in accordance with the Rules then obtaining of the American Arbitration Association or the General Arbitration Council of the Textile Industry...." *Cf. Trafalgar Square, Ltd. v. Reeves Brothers, Inc.* 35 A.D.2d 194, 196, 315 N.Y.S.2d 239 (1970).

The arbitration clause also provides that it covers any controversy "relating to this contract." It cannot be contended seriously that the amount of financial return which T M expected to receive from a contract to purchase Pervel goods bore no relationship to the purchase contract. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *Peter Pan Fabrics, Inc. v. Kay Windsor Frocks, Inc.*, 187 F.Supp. 763, 764 (S.D.N.Y.1959). Neither Pervel nor T M is a philanthropic organization; both are in business to make money. If, in fact, Pervel gave T M an exclusive distributorship with a covenant not to compete, it obviously was because both parties believed it would benefit them financially to do so. It would blink reality to hold that this desire for profit bore no relationship to the purchase contract.

Indeed, unless and until T M and Pervel entered into a contract for the purchase and sale of a particular Pervel product, the asserted exclusive distributorship arrangement for that product did not come into being; the arrangement had no starting point, no finishing point and no subject matter. It was at best an offer for a unilateral contract which was accepted, if at all, by T M's purchase from a particular product line. The relationship between the contract of purchase and the exclusive distributorship which it created is clear and direct. The district court therefore correctly distinguished this case from *Necchi S.p. A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), upon which T M heavily relied.

For all the foregoing reasons, the order of the district court is affirmed.