**AKRON STEEL FABRICATORS CO., Plaintiff,**

v.

**KRUPP PLASTICS & RUBBER MACHINERY (USA), INC., a/k/a Krupp Rubber Machinery, Inc., Defendant.**

No. 5:96–CV–2460.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 19, 1996.

Leonard W. Stauffenger, Richard T. Cunningham, John C. Weisensell, Amer, Cunningham, Brennan, Akron, OH, for Akron Steel Fabricators Co.

James A. Mollica, Jr., Mollica & Murray, Pittsburgh, PA, for Krupp Plastics & Rubber Machinery (USA), Inc.

*MEMORANDUM OPINION*

(Resolving Docket Nos. 3, 10 and 20)

DOWD, District Judge.

## I. INTRODUCTION

The Court is called upon to decide whether, under the facts of this case, a written arbitration clause is enforceable when the parties did not discuss arbitration during negotiations and when the clause was included in small print on the reverse side of the buyer's purchase order. The Court's inquiry is complicated by the fact that the parties, in executing a half-million-dollar agreement, did not utilize a unified written instrument and now cannot agree on what actually constitutes the written agreement. Given the facts of this case, the course of dealing between the parties, and the federal policy in favor of enforcement of arbitration provisions, the Court holds that the clause is valid and enforceable. Therefore the Court shall grant the defendant's motion to stay proceedings and to compel arbitration (Docket No. 3) and shall deny the plaintiff's motion to enjoin arbitration proceedings (Docket No. 10).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Akron Steel Fabricators Co. ("ASF") is an Ohio corporation which manufactures equipment for the rubber and plastics industries. The defendant, Krupp Plastics & Rubber Machinery (USA) ("Krupp"), is a German corporation with its principal place of business in New Jersey.

In January 1995 Krupp was in charge of a major construction project in Mayfield, Kentucky ("the Mayfield project"). Ernest Els, Krupp's project manager, contacted Robert Dempster, vice president of ASF, to inquire whether ASF would be interested in submitting a bid for fabrication of certain conveyor

equipment for the project. Els and Dempster met at Krupp's offices in February. Dempster, who had authority to bind ASF to a contract, submitted an offer to Krupp on February 28. (Dempster affid. exh. A–1). Krupp did not accept the offer.

Els and Dempster met for additional negotiations at Krupp's offices on March 13. Els states in his affidavit that he and Dempster "reviewed in detail the . . . specifications for conveyors dated 3/13/95." (Els. affid. at ¶ 8). Dempster also acknowledges reviewing the specifications. (Dempster depo. at 59, 66). These specifications, prepared by Krupp, comprise several pages and cover everything from delivery time to insurance to warranties. Paragraph 14 of the specifications reads as follows:

14. General Conditions

The only basis for the fulfillment of this order is:

1. Contents of this purchase order and our relevant technical specification.

2. CUSTOMER's Technical Specifications supplied by BUYER are applicable.

3. *BUYER's Terms and Conditions on the reverse side of Purchase Order.*

4. Any modifications or additions to this Contract must be agreed to in writing by the BUYER prior to becoming effective.

(Els affid. at Exh. C) (emphasis added).

The next day, March 14, Dempster sent Els a "revised quotation." (*Id.* at Exh. D). The document begins: "Akron Steel Fabricators is pleased to requote the [Mayfield project] per the specifications set forth by Krupp." Dempster stated in an affidavit that the "specifications" to which the letter referred were the specifications set forth by Krupp the prior day. (Dempster affid. at 59). The new quote called for a price of $543,600. The parties engaged in additional negotiations on March 14 before orally agreeing to a price of $533,000 by the end of the day. (Dempster depo. at 60). Els testified the parties understood ASF was to begin work immediately because "there was a tight delivery." (Els depo. at 25).

As stated *supra*, one of the specifications stated that the contract would be subject to terms on the reverse side of Krupp's purchase order. At the time the parties agreed to the contract, Krupp had not sent ASF a purchase order for the Mayfield project. The purchase order was sent to Krupp in mid-April, confirming the $533,000 price to which the parties finally agreed. The following was written at the bottom of the purchase order:

BE SURE TO READ ALL THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE OF THIS PURCHASE ORDER. THEY ARE PART OF THE CONTRACT, AND THIS PURCHASE ORDER IS EXPRESSLY LIMITED TO THESE TERMS AND CONDITIONS. PLEASE RETURN PROMPTLY THE ATTACHED ACKNOWLEDGEMENT, YOUR SIGNED ACCEPTANCE OF WHICH IS YOUR AGREEMENT TO THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF.

(Els affid. exh. E). One of the terms on the reverse side of the order was the arbitration clause which is the subject matter of the instant lawsuit. The clause reads as follows:

ARBITRATION

17. Any dispute, controversy or claim arising out of or relating to this contract, or the interpretation, performance or breach thereof, shall be settled by arbitration in New York, New York, in accordance with the Rules of the American Arbitration Association; and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction thereof. The Arbitrator or Arbitrators shall make their determination strictly in accordance with the provisions of this contract.

(Els affid. exh. E). Dempster states in his affidavit that he received the purchase order in mid-April. (Dempster affid. at ¶ 8). He states that he signed the purchase order's receipt without reading the information in capital letters regarding the terms and conditions on the reverse side of the purchase order. (*Id.* at ¶ 11). He states that shortly after signing it, he noticed the information

and elected not to return the receipt to Krupp. (*Id.*). ASF's secretary, who lacked authority to bind the corporation contractually, sent Krupp an ASF form receipt acknowledging receiving the purchase order. (*Id.* at exh. D).

ASF acknowledges having executed several contracts with Krupp using the same course of dealing since 1991. The parties would negotiate and agree to a contract, and Krupp would send a form purchase order identical to the purchase order in the instant case, containing the warning on the front side that the contract included binding terms and conditions on the reverse side. In each case the terms and conditions on the reverse of the purchase order included the same arbitration clause as is present in the instant case. Because the parties never had a breakdown in their relationship prior to this contract, the issue of arbitrability had not arisen previously.

Dempster said that despite Krupp's printed notice on its purchase order that the contract included terms and conditions on the reverse side, he does not recall ever having read the provisions on the reverse side. (Dempster depo. at 20). He said he read the purchase orders only to assure that "the quantities are correct, the items are correct and the price is correct." (*Id.* at 20).

A dispute arose over the performance under this contract.[1] ASF filed suit in common pleas court of Summit County, Ohio, on October 30, 1996, seeking damages for breach of contract and a declaration that the arbitration provision was invalid and unenforceable. On November 8 ASF moved the state court to stay arbitration proceedings and requested an evidentiary hearing on the question of the enforceability of the arbitration provision. Without conducting a hearing, the state court signed an order on November 12 staying

arbitration proceedings until the lawsuit and all appeals therefrom were resolved. Krupp then removed the case to this Court pursuant to 28 U.S.C. § 1441. Krupp filed a motion to stay proceedings, to dissolve the state court restraining order and to compel arbitration (Docket No. 3). The Court held a pre-Case Management Conference on November 22, after which it issued an order expressing its view that the state court injunction issued prior to removal is not enforceable in this court and scheduling a hearing on the motion to stay proceedings and to compel arbitration. In the meantime, ASF filed a motion to enjoin arbitration proceedings (Docket No. 10) and a motion for summary judgment on the issue of arbitration (Docket No. 20).[2] The Court conducted the hearing on December 17 and heard argument from both sides as well as testimony from Krupp's Els. The Court also has the benefit of depositions and affidavits filed by both parties.

### III. DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 2 ("the Act"), provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

Section 3 of the Act requires the district court, upon being satisfied that a controversy is referable to arbitration under the terms of a contract, to stay proceedings pending the completion of arbitration. The Act thus "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to pro-

---

**1.** Details of the dispute are not clear from an examination of the record. The suit filed by ASF merely states it has fully performed but Krupp has failed to fully pay. At a case management conference conducted by the Court on November 22, 1996, the parties informed the Court that Krupp maintains that ASF's product was not delivered in a timely manner and did not conform to the specifications of the contract. However, lack of details is not relevant to the threshold inquiry of arbitrability.

**2.** The motion for summary judgment, filed on the eve of the hearing, was not solicited by the Court. Although the Court read the motion and its accompanying memorandum, the Court is of the view that it is not necessary to decide a motion for summary judgment when both parties have other motions on the table dispositive of the issue at hand. The motion for summary judgment is therefore denied as moot.

ceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). In the Court's view, the statute and the case law illustrate that the Court's first duty is to determine whether the instant controversy is covered by a valid arbitration clause. If so, the Court can proceed no further but instead must allow arbitration to take its course.

ASF insists the arbitration clause should not be considered a part of the contract between the parties because it appeared only in fine print on the reverse of a purchase order which was not produced until after the parties had agreed to the elements of the contract. Its authorized representative, Dempster, testified he had no knowledge of the arbitration clause and would not have agreed to such a provision. ASF argues it cannot be held bound to a clause to which it did not agree.

The parties had not discussed the subject of arbitration during the course of their extended business relationship, despite the fact that the arbitration provision appeared in all of the purchase orders memorializing the parties' business agreements. Krupp's Els testified at the court hearing he had never raised the subject with ASF's Dempster. However, Krupp argues that no provision of contract law requires the parties to expressly assent to every provision of an enforceable written agreement.

A close tracing of the negotiations of the instant contract, combined with the prior course of dealing between the parties, leads the Court to conclude that the arbitration clause was a part of the contract and is therefore enforceable. It is not disputed that Dempster and Els met on March 13, 1995, to negotiate the contract and that the parties discussed the contract's specifications. It also is uncontroverted that Dempster foresaw that the specifications he discussed with Els were part of the contract:

Q. [Y]ou had previously reviewed [the specifications] with Mr. Els, hadn't you?

A. Yes.

Q. And those were part of your contract negotiation with this project?

A. Yes.

Q. Was it your understanding these were part of the contract?

A. Yes. The only exception in there would have been we wanted to use our warranty rather than the warranty specified in the—and in all cases we included our warranty.

Q. That's the only exception?

A. It's the only one I can think of.

Q. Other than that these terms and conditions applied?

A. Yes.

(Dempster depo. at 66–67). As stated on page 837 *supra,* paragraph 14 of the specifications which Dempster accepted provided that the "only basis" for fulfillment of Krupp's order was the terms and conditions on the reverse side of the purchase order. Dempster thus accepted that the purchase order's terms and conditions were a part of the contract.

ASF argues it cannot be held to the terms of the purchase order because the purchase order was not even sent until a month after ASF began performing under the contract. Such an argument is doomed by the fact that the parties had engaged in a course of dealing in which *the same* purchase agreement form with *identical* terms and conditions, including the arbitration clause, always was used.

The fact that the arbitration provision was part of a preprinted form routinely exchanged as part of a commercial transaction is not helpful to ASF. As the Court of Appeals for the Second Circuit stated in *Pervel Indus., Inc. v. TM Wallcovering, Inc.,* 871 F.2d 7 (2d Cir.1989), a case involving similar facts:

Where, as here, a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision. This is particularly true in industries ... where the spe-

cialized nature of the product has led to the widespread use of arbitration clauses and knowledgeable arbitrators.

*Id.* at 8 (citations omitted). Els states in his affidavit that in his experience arbitration provisions are common in the industrial machinery and rubber machinery industries. (Els affid. at ¶ 17). ASF, a 50–year–old business with contracts throughout the United States as well as in foreign countries, cannot claim unfair surprise under these circumstances.

The Court also finds instructive *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir.1987). The parties in *Genesco* had executed a number of contracts involving the sale of textile products. All transactions were memorialized by Genesco, the buyer, submitting a written purchase order to the seller. The seller in turn sent Genesco a written sales confirmation form which set forth a comprehensive list of terms and conditions, including an arbitration clause. On the bottom of the front of the confirmation note was the following language:

> THIS CONTRACT IS SUBJECT TO ALL THE TERMS AND CONDITIONS ON THIS SIDE AND THE REVERSE SIDE THEREOF, INCLUDING THE PROVISIONS OF PARAGRAPH 7 PROVIDING FOR ARBITRATION OF ALL DISPUTES.

*Genesco*, 815 F.2d at 845. Genesco received these forms without objection and returned some of them with the initials or signature of a company representative. When a dispute arose, the parties disputed whether the arbitration clause was enforceable. The district court found that Genesco was an experienced business with notice that arbitration agreements are common in the textile industry. Genesco argued on appeal that it did not specifically agree to the arbitration clauses. The court of appeals said that such an argument "misapprehends our inquiry. We focus not on whether there was *subjective agreement* as to each clause in the contract, but on whether there was an *objective agreement*

with respect to the entire contract." *Id.* at 846 (emphasis added).

Likewise, in the instant case the Court finds there was "an objective agreement with respect to entire contract." This is evidenced by Dempster's admission he accepted Krupp's specifications (Dempster depo. at 66–67, quoted *supra*) and by the parties' longstanding use of the same purchase order form including an arbitration clause. These objective manifestations prevail over any unspoken subjective thoughts of one party. "The relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties." *Bennett v. Heidinger*, 30 Ohio App.3d 267, 268, 507 N.E.2d 1162 (Cuyahoga Co.1986) (citing 1 Corbin on Contracts (1963), Section 9). A contractual relationship imposes upon the parties a duty to know the details of what they are agreeing to.[3] If there was a misunderstanding based upon ASF's failure to read the fine print of the purchase order (despite being referred to the fine print by a warning in capital letters on the front of the purchase order), the consequence of the misunderstanding should be borne by the party failing to read.

In sum, the parties engaged in a course of conduct in which negotiations would culminate in Krupp sending a purchase order to ASF. The purchase order expressly incorporated an arbitration provision and was never objected to by ASF. The objective manifestations of the parties evidenced an agreement to arbitrate disputes. This conclusion, which the Court finds to be sound based upon the facts and the relevant case law discussed above, is supported all the more by the general federal policy in favor of arbitrability of disputes, articulated in a number of Supreme Court cases, including *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985):

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The

---

**3.** ASF cannot claim that the purchase order does not form a part of the contract between the parties. It is the only document bearing the price of the transaction, and it is referred to as a basis of relief in ASF's complaint in state court.

And there is no reasonable basis for finding that the front of the purchase order is part of the contract but the back of the purchase order is not, particularly when the front side expressly incorporates the terms of the back side.

Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* at 626, 105 S.Ct. at 3354 (quoting *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

## IV. CONCLUSION

For the reasons set forth above, the motion of the plaintiff to enjoin arbitration proceedings is denied. The motion of the defendant to stay proceedings and compel arbitration is granted. The Court shall publish a judgment entry contemporaneously with the issuance of this memorandum opinion.

IT IS SO ORDERED.

