**HUNTINGTON INTERNATIONAL CORPORATION, Plaintiff,**

v.

**ARMSTRONG WORLD INDUSTRIES, Defendant.**

**No. 97 CV 669 NG.**

United States District Court, E.D. New York.

Oct. 22, 1997.

Jaroslawicz & Jaros by Robert J. Tolchin, New York City, for Plaintiff.

Coleman & Rhine, LLP by Mark S. Pomerantz, New York City, for Defendant.

## OPINION AND ORDER

GERSHON, District Judge:

In January 1997, plaintiff filed a New York State court action raising breach of contract, fraud, and deceptive trade practice claims. Asserting diversity jurisdiction, defendant removed the case to this court in early February 1997. Later, defendant filed a demand for arbitration with the American Arbitration Association. Now pending are defendant's motion for a stay of this action pending arbitration and plaintiff's motion to stay the arbitration commenced by defendant.

### Underlying Claims

Plaintiff's underlying claim is that it contacted defendant, a manufacturer of flooring products, and offered to try to develop. a market for defendant's flooring products in Argentina. Defendant indicated that, if plaintiff could develop such a market, plaintiff would become defendant's sales agent for the Argentinian market. In 1993, plaintiff began ordering defendant's products for Libertad, a major retail chain in Argentina. From 1993 to 1996, plaintiff placed approximately $ 10,000 to $30,000 worth of orders with defendant per year for Libertad. In June 1996, Libertad placed two orders totaling approximately $500,000 with plaintiff for defendant's products. When plaintiff attempted to confirm those orders with Libertad, Libertad demanded a lower price, indicating that defendant had offered a lower price if Libertad were to purchase the products directly from defendant. Defendant then refused to lower the price it charged plaintiff, and Libertad placed its order directly with defendant, eliminating plaintiff as distributor.

For its part, defendant agrees that plaintiff was one of its customers from 1993 through 1996 and that, during that time, plaintiff placed a number of orders with defendant. Until July 1996, defendant shipped the goods requested in plaintiff's orders. However, plaintiff often failed to pay defendant in a timely manner, and to this date plaintiff owes defendant $29,000 on one order. When plaintiff placed an order in July 1996, plaintiff's outstanding balance and poor payment history, and the size of its latest order, led defendant to require plaintiff to provide a letter of credit before defendant would agree to ship the requested goods. When plaintiff was unable to obtain the line of credit, defendant refused to ship the goods. According to defendant, its refusal to ship to plaintiff had nothing to do with its desire to do business directly with Libertad, and everything to do with plaintiff's inability to obtain a letter of credit.

### Arbitration

Defendant represents that its policy is to include a Terms and Conditions of Sale document with each and every order acknowledgment that it sends to an export customer, such as plaintiff, after that customer has submitted a purchase order. The Terms and Conditions of Sale document contains the following arbitration provision:

Any dispute or claim of [purchaser] arising in connection with the sale of

Merchandise ordered from, manufactured, or sold by Armstrong shall be settled and adjudicated pursuant to the law of the Commonwealth of Pennsylvania, U.S.A. (conflict-of-laws principles excluded). Armstrong and Purchaser mutually agree that the rules of the U.N. Convention on

the International Sale of Goods shall not apply to this transaction. Disputes shall be settled finally by arbitration in accordance with UNCITRAL Rules in Philadelphia using the facilities of the American Arbitration Association.... Neither [purchaser] nor any course of dealing hereunder or otherwise shall act to constitute [purchaser] as a Distributor of Armstrong. Any distributorship shall only be created by a separate written agreement.

The document also states in its first paragraph, "By entering an Order directly with [defendant] ... you agree that the terms and conditions set forth below shall be incorporated in your Order."

Plaintiff does not dispute defendant's policy or that it received the Terms and Conditions of Sale document during its course of dealings with defendant; plaintiff also acknowledges that it has "one or two copies" of the document in its files. Transcript of May 23, 1997 argument, at p. 7. Moreover, plaintiff does not assert that it ever objected, prior to the filing of this action, to the arbitration clause or any other provision in the Terms and Conditions of Sale document. Instead, it relies on the absence of evidence that the Terms and Conditions of Sale document was ever presented directly by defendant to one of plaintiff's executives or signed by any of plaintiff's officers.

## ANALYSIS

■ "Federal policy, as embodied in the Federal Arbitration Act ..., strongly favors arbitration as an alternative dispute resolution process." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) (footnote omitted). The Federal Arbitration Act ("the FAA") provides that written arbitration provisions in contracts involving interstate or international commerce are " 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Id.* (quoting 9 U.S.C. § 2). Thus, the FAA requires that court proceedings be stayed and parties ordered to arbitration if a court is satisfied that a dispute is subject to arbitration:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. § 3; *see Progressive Casualty,* 991 F.2d at 45. District courts have no discretion on this issue; the FAA mandates that parties be directed to arbitrate disputes as to which there is an arbitration agreement. *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985).

In determining the arbitrability of a particular dispute, a court decides whether the parties agreed to arbitrate and, if so, whether the asserted claims fall within the scope of that agreement. *Progressive Casualty,* 991 F.2d at 45 (citations omitted). Plaintiff here argues both that it did not agree to arbitrate and that, even if it did, the claims presented by this case fall outside the scope of the arbitration agreement.

### Whether the Parties Agreed to Arbitrate

Plaintiff disputes neither that defendant has a policy of including a Terms and Conditions of Sale document with every order acknowledgment nor that it received the Terms and Conditions of Sale document during its course of dealings with defendant. Instead, plaintiff argues that mere receipt without objection cannot form the basis of an agreement to arbitrate. In 1989, the Court of Appeals for the Second Circuit expressly rejected that argument, stating

Where ... a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and retained or *retained without objection,* is bound by the arbitration provision.

*Pervel Indus., Inc. v. TM Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir.1989) (emphasis added). Faced with this holding, plaintiff argues that recent federal cases and a proper review of New York state law contract formation principles should lead the court to a different result. For the reasons that follow, this argument is rejected.

The extent to which state law contract formation principles should be applied in cases arising under the FAA has been addressed at length in recent cases. In *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, ——, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996), the Supreme Court held that "States may regulate contracts, including arbitration clauses, under general contract principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (internal quotations omitted) (emphasis in original); *see First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts."); *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) ("[S]tate law ... is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (emphasis in original)); *Progressive Casualty,* 991 F.2d at 46 ("*Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), dictates that we apply state law in determining whether the parties have agreed to arbitrate.").

■ "Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Associates,* 517 U.S. at ——, 116 S.Ct. at 1656. That is because

> [a] state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2 [of the FAA]. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.

*Perry,* 482 U.S. at 492 n. 9, 107 S.Ct. at 2527 n. 9. Thus, " § 2 of [the FAA] preempts state law which treats arbitration agreements differently from any other contracts...." *See Progressive Casualty,* 991 F.2d at 46.

In arguing that no agreement to arbitrate exists in this case, plaintiff relies on a New York state law principle set forth in *Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978).[1] Applying Section 2–207(2) of the Uniform Commercial Code,[2] the *Marlene Industries* Court held as follows:

> Since an arbitration agreement in the context of a commercial transaction "must be clear and direct, and must not depend upon implication, inveiglement or subtlety * * * (its) existence * * * should not depend solely upon the conflicting fine print of commercial forms...." Thus, at least under this so-called "New York Rule," it is clear that an arbitration clause is a material addition which can become part of a contract only if it is expressly assented to by both parties.

*Id.* at 334, 408 N.Y.S.2d 410, 380 N.E.2d 239. In so holding, the Court reasoned that "by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than

---

1. Insofar as state law is relied upon by the parties, it is the law of New York. Therefore, for purposes of this motion, the court will also rely upon the law of New York.

2. Section 2–207(2) of the UCC provides that additional terms become part of a contract between merchants unless "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them ... is given within a reasonable time after notice of them is received."

a clear indication of intent." *Id.* at 333–34, 408 N.Y.S.2d 410, 380 N.E.2d 239 (internal citations omitted). Relying on the *Marlene Industries* rule, the New York Court of Appeals in *Schubtex, Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979), held that, even when parties have a history of dealings in which the seller has sent order confirmations containing an arbitration clause, the arbitration clause is not binding absent "evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes." *Id.* at 135, 399 N.E.2d at 1156.

The Court of Appeals for the Second Circuit has expressly held that the rule of *Marlene Industries* is preempted by the FAA:

> [New York] law provides that parties will not be held to have chosen arbitration "in the absence of an express, unequivocal agreement to that effect." *Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327 [408 N.Y.S.2d 410, 380 N.E.2d 239].... However, New York law requires that nonarbitration agreements be proven only by a mere preponderance of the evidence. Because *Perry* prohibits such discriminatory treatment of arbitration agreements, the rule set forth in *Marlene Industries* is preempted. Accordingly, in determining whether the parties have agreed to arbitrate, we apply the ordinary preponderance of the evidence standard.

*Progressive Casualty,* 991 F.2d at 46 (citations omitted). Explaining that "while § 2 of the [FAA] preempts state law which treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have agreed to arbitrate," the *Progressive Casualty* Court turned to general New York state law principles which apply equally to arbitration and non-arbitration agreements. *Id.* (internal quotations omitted). Applying those general principles, the Court held that a party is bound by an arbitration clause when it signs

an agreement that incorporates by reference a document which includes an arbitration clause. *Id.* at 44–46.

■ Here, applying general New York contract principles, which do not discriminate between arbitration agreements and other contracts, plaintiff is bound by the arbitration provision in the Terms and Conditions of Sale document. *See, e.g., Kay–Bee Toys Corp. v. Winston Sports Corp.,* 214 A.D.2d 457, 625 N.Y.S.2d 208 (1st Dept.), *leave denied,* 86 N.Y.2d 705, 632 N.Y.S.2d 498, 656 N.E.2d 597 (1995). Indeed, prior to the establishment of the *Marlene Industries* rule, New York courts, applying general contract principles to arbitration clauses, had found them binding in circumstances similar to those presented here. *See, e.g., Suits Galore, Inc. v. Stone Ridge Knitting Mills, Inc.,* 49 A.D.2d 819, 372 N.Y.S.2d 686 (1st Dept. 1975) (arbitration clause is binding on buyer who received and retained without objection contract containing arbitration clause before accepting goods); *Braten Apparel Corp. v. Rutger Fabrics Corp.,* 35 A.D.2d 921, 318 N.Y.S.2d 771 (1st Dept.1970) (purchaser was bound by arbitration clause even though it never signed contract containing the clause, because it accepted the goods and because the contracts were in the same form as those previously used in a long period of dealings between the parties); *In re Baroque Fashions, Inc.,* 19 A.D.2d 873, 244 N.Y.S.2d 118 (1st Dept.1963) ("The acceptance of goods delivered under an order containing a provision for arbitration could be considered an agreement on the part of the buyer to resolve disputes in the arbitral forum.").

In sum, under both the opinion of the Court of Appeals for the Second Circuit in *Pervel Industries,* 871 F.2d 7, and general New York contract principles which do not discriminate between arbitration agreements and other contracts,[3] plaintiff is bound by the arbitration clause contained in defendant's purchase order confirmations because plaintiff, over a long course of dealing, received

---

**3.** Indeed, the *Pervel* court relied in part on those general New York contract principles. *See Perv-* *el,* 871 F.2d at 8.

those confirmations and retained them without objection.

### Whether the Arbitration Provision Encompasses the Instant Dispute

Finally, plaintiff argues that, even if it had agreed to the arbitration clause, that clause would not govern the instant action, as the claims presented arise from an alleged distribution agreement between plaintiff and defendant, rather than any agreement governing plaintiff's purchase of defendant's goods. The *Pervel* Court,[4] considering the arbitration clause involved in that case, rejected a similar argument:

> The arbitration clause also provides that it covers any controversy "relating to this contract." It cannot be contended seriously that the amount of financial return which TM expected to receive from a contract to purchase Pervel goods bore no relationship to the purchase contract....

> Indeed, unless and until TM and Pervel entered into a contract for the purchase and sale of a particular Pervel product, the asserted exclusive distributorship arrangement for that product did not come into being; the arrangement had no starting point, no finishing point, and no subject matter.... The relationship between the contract of purchase and the exclusive distributorship which it created is clear and direct.

*Pervel*, 871 F.2d at pp. 8–9.

█ In the case at hand, the arbitration clause provides that any dispute of the purchaser "arising in connection with the sale of Merchandise ordered from, manufactured, or sold by [defendant]" shall be settled by arbitration. Just as disputes regarding the asserted distributorship agreement in *Pervel* were held to be controversies "relating to" the purchase order contract in that case, so too the dispute raised by plaintiff (the purchaser) in this case qualifies as a dispute "arising in connection with" the parties' pur-

chase order contract. To use the language of the Second Circuit in *Pervel*, "[i]t cannot be contended seriously that the amount of financial return which [plaintiff] expected to receive from a contract to purchase [defendant's] goods bore no relationship to the purchase contract." *Pervel*, 871 F.2d at pp. 8–9. Also, "unless and until [plaintiff] and [defendant] entered into a contract for the purchase and sale of a particular ... product, the asserted exclusive distributorship arrangement for that product did not come into being; the arrangement had no starting point, no finishing point, and no subject matter." *Pervel*, 871 F.2d at pp. 8–9. Thus, any dispute arising between plaintiff and defendant with regard to the asserted distributorship agreement is also a dispute that arises "in connection with" the parties' purchase order contract, and so is governed by the arbitration clause.

### CONCLUSION

In sum, I find both that plaintiff is bound by the arbitration provision at issue in this case and that plaintiff's asserted claims fall within the scope of the parties' agreement to arbitrate. Accordingly, defendant's motion for an order staying this action pending arbitration is granted, and plaintiff's motion for an order staying the arbitration is denied. The action is hereby STAYED pending arbitration.

**SO ORDERED.**

---

4. Plaintiff does not dispute that the issue of an arbitration agreement's scope is governed by federal law. *See Progressive Casualty,* 991 F.2d at 48 ("The issue of an arbitration agreement's scope is governed by 'the federal substantive law of arbitrability'....").