INFINITY INDUSTRIES,
INC., Plaintiff,

v.

REXALL SUNDOWN, INC., Defendant.

No. 99–CV–2807(JS)(VVP).

United States District Court,
E.D. New York.

Nov. 12, 1999.

Richard M. Zaroff, Wormser, Kiely, Galef & Jacob, New York City, for Plaintiff.

Michael A. Bamberger, Esq., Sonnenschein Nath & Rosenthal, New York City, for Defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

This lawsuit alleging breach of contract was filed on May 19, 1999. Plaintiff Infinity Industries, Inc. alleges that defendant Rexall Sundown Inc. has breached a contract under which Infinity would supply Rexall with 33,000 kilograms of St. John's Wort. Infinity claims that after formation of the contract to supply this material at a price of $75 per kilogram, the market price dropped precipitously to approximately $45 per kilogram, after which Rexall allegedly informed Infinity that it was "canceling" its contract. The complaint contains a cause of action for breach of contract as well as a claim for incidental expenses in the form of storage and transportation costs related to the contract.

Shortly after the complaint was filed, Rexall filed the present motion to compel arbitration and stay these proceedings pending the outcome of the arbitration. Rexall argues that pursuant to numerous purchase orders accepted by Infinity over the course of several months, as well as a confidentiality agreement entered into with Infinity, the parties are bound to arbitrate any disputes arising out of their transactions through the American Arbitration Association in West Palm Beach, Florida. Plaintiff opposes the motion on the grounds that the arbitration clauses alluded to by Rexall were "buried" and "ambiguous", and that arbitration is not the normal forum for disputes in the pharmaceutical industry.

For the reasons discussed below, the motion is granted and judicial proceedings will be stayed pending the outcome of the arbitration.

## DISCUSSION

■ The Federal Arbitration Act evinces a "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.*, 189 F.3d 289, 294 (2d Cir.1999) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998)). The Act provides that written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999); *see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.1993). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense." *Chelsea Square*, 189 F.3d at 294 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

■ A district court must judge the arbitrability of a particular issue by deciding "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *Progressive Cas.*, 991 F.2d at 45 (quoting *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991)); *see also Chelsea Square*, 189 F.3d at 294. The parties here do not dispute that if the arbitration agreement is valid,

such agreement would encompass the present dispute as currently embodied in Infinity's complaint. Therefore, the Court proceeds to analyze the determinative factor in this motion, whether there is a valid and enforceable agreement to arbitrate.

In determining whether parties to a contract have agreed to arbitrate, the court must look to general state law contract principles. *Chelsea Square*, 189 F.3d at 296. The parties to this dispute have cited case law emanating from both the Second Circuit and New York State, and do not dispute that New York law applies in making this inquiry.[1] Thus, the Court applies New York law in determining whether Infinity and Rexall have agreed to arbitrate.

Here, the defendant contends that Infinity agreed to arbitrate the contract-related claims by virtue of Infinity's acceptance of Rexall's purchase orders. Rexall submits copies of eight purchase orders, the first dated October 28, 1997, reflecting approximately $5,296,000 in purchases made by Rexall. Affidavit of Terry Hannon, ¶¶ 4, 6, Exh. C. Each purchase order states in bold print on the last line of the front page that **"On the reverse side are terms and conditions in which the seller agrees by acceptance of this order."** Hannon Aff., Exh. C. The reverse side of each Rexall purchase order, at the top of the page in bold capital letters, contains the language **"THIS ORDER IS ACCEPTED BY YOUR COMPANY WITH THE FOLLOWING AGREED UPON CONDITIONS."** *Id.*, Exh. D. Following this language, there are seven so-called "bullet-points" which address items such as price, quantity, overages, shortages, back orders, and an express warranty. *Id.* In the middle of the page, in normal typeface, is a single-spaced, fifteen-line paragraph, which reads as follows:

Rexall Sundown, Inc. hereby agrees to pay this invoice within 30 days after receipt of goods, unless prior arrangements have been agreed upon. It is agreed that should any dispute arise out of the purchase of the goods contained or described on this purchase order, the prevailing party shall be entitled to reasonable attorneys' fees in arbitration, at trial or on appeal. Through the sale of these goods to Rexall Sundown, Inc., you hereby acknowledge that Rexall Sundown, Inc. is purchasing these goods for resale in the form of products and collateral goods and warrants these products and goods to its customers. The Seller hereby indemnifies Rexall Sundown, Inc. for any losses occasioned as a result of the purchase, including but not limited to damages, suits brought, successfully or unsuccessfully, against Rexall Sundown relative to Rexall Sundown's purchase of the product. The Seller hereby warrants all goods to be pure, non-negligently manufactured and fit for the use intended and free of latent defects, not readily observed by an untrained eye. All disputes arising out of this purchase shall be determined in arbitration through the American Arbitration Association and shall be heard in West Palm Beach, Florida. All parties agree that Florida Law shall apply to any dispute. All parties agree that Palm Beach County Courts are the designated forum to enforce any award in arbitration rendered by the American Arbitration Association.

*Id.*

This language is followed by a four-line paragraph, in normal print, dealing with equal employment opportunity compliance. *Id.* Following this paragraph, there is a notice to Rexall's printing vendors, followed by five more "bullet-point" statements relating to printing matters. *Id.*

---

1. The Rexall Purchase Order at issue here states on the reverse side that Florida state law would apply to any dispute. The parties apparently understand this language to apply only to the underlying substantive contractual dispute, not to the threshold question of the arbitrability of the dispute itself.

Rexall points out that Infinity admitted in its complaint that it did, in fact, accept the Purchase Order that references the sale at the center of this dispute. *See* Complaint, ¶ 9 ("Infinity accepted the Purchase Order upon its receipt in New York and communicated its acceptance to Rexall."). Therefore, Rexall argues, Infinity accepted not only the Purchase Order for 33,000 kilograms of St. John's Wort, in the total amount of $2,475,000, but also accepted the arbitration clause on the reverse of the document.

Rexall also draws the Court's attention to a confidentiality agreement entered into by the parties on July 7, 1997, in which another arbitration clause is found. On page three of the agreement, under paragraph number seven, entitled "CONTROLLING LAW," the agreement states in single-spaced normal type that

> [t]his Agreement, including all matters relating to the validity, construction, performance, and enforcement thereof, shall be governed by the laws of the State of Florida. All disputes arising out of or under this Agreement shall be submitted to the American Arbitration Association to be heard in Palm Beach County, Florida under the rules then in force. The parties acknowledge that any violation of this Agreement is appropriate for injunctive relief, since damages would be an inadequate remedy. The prevailing party in any dispute shall be reimbursed all of its costs including attorney's fees and costs, by the other party.

Hannon Aff., ¶ 5, Exh. B. This agreement was signed by Michael Wong, on behalf of Infinity, but was not signed by a Rexall representative. *Id.*

Rexall does not argue that the arbitration clause in the confidentiality agreement governs the present dispute. Instead, Rexall argues that the confidentiality agreement, which was signed by a representative of Infinity prior to any transactions between the two companies, simply placed Infinity on notice of Rexall's policy of arbitration of disputes rather than litigation of disputes.

Infinity disputes Rexall's conclusion that Infinity was placed on notice of Rexall's intent to arbitrate by the confidentiality agreement, and disputes the conclusion that the Purchase Order at issue bound the parties to arbitrate disputes arising under that particular transaction. Instead, Infinity claims that (1) it never signed the Purchase Order; (2) there was no "meeting of the minds" concerning arbitration; (3) the parties' course of dealings was quite brief, having lasted only five months; (4) there is no reference to arbitration on the front of the Purchase Order; (5) the arbitration language is not really an "arbitration clause" because it is buried in other language; (6) the arbitration language is ambiguous and confusing; (7) the parties are not in an industry with a well-developed history of arbitration; (8) Rexall's failure to sign the confidentiality agreement contradicts Rexall's alleged choice of arbitration as a means of dispute resolution; and (9) the confidentiality agreement did not place Infinity on notice of Rexall's policy of arbitration.[2] *See* Plaintiff's Memorandum of Law in Opposition to Motion, at 10–11. None of these arguments has merit.

■ Infinity's admission in the complaint that it accepted the Purchase Order at issue here is, in large part, dispositive of this motion to compel arbitration. *See* Complaint, ¶ 9. Infinity did not object to the arbitration clause on the Purchase Order, nor had Infinity objected to any of the other terms and conditions on any of Rexall's previous purchase orders. By accept-

---

2. Because neither party claims that the present dispute, as contained in the complaint, involves the confidentiality and trade secret matters embodied in the confidentiality agreement, the Court need not consider whether the arbitration clause found in this agreement did, in fact, place Infinity on notice of Rexall's preference for arbitration. Thus, for purposes of the present motion, the confidentiality agreement and its contents are irrelevant.

ing the Purchase Order, Infinity accepted the Purchase Order in its entirety, including the terms and conditions on the reverse side of the document. *See Chelsea Square,* 189 F.3d at 296 ("[t]he front of each Confirmation plainly informed the textile buyer that any sale would be governed by the terms and conditions printed on the reverse side."); *see also Pervel Indus., Inc. v. T M Wallcovering, Inc.,* 871 F.2d 7, 9 (2d Cir.1989) (holding that arbitration agreement appearing on reverse side of printed confirmation form was binding on the parties).

■ Infinity's arguments that there is no established tradition of arbitration in the pharmaceutical industry and that its relationship with Rexall was brief does not compel a finding that the arbitration clause was invalid. Evidence of industry custom and the parties' course of dealings are merely two factors among many that can be considered by a court in determining the question of an agreement to arbitrate. While "New York law *allows* an arbitration agreement to rest on 'evidence of trade usage or of a prior course of dealings,'" these two factors are not dispositive. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995) (emphasis added) · (quoting *Schubtex, Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 135, 399 N.E.2d 1154 (1979)). Nevertheless, Rexall's eight purchases over seven months, constituting over $5 million in sales, were sufficient to bind Infinity to arbitration agreement. *Suits Galore, Inc. v. Stone Ridge Knitting Mills, Inc.,* 49 A.D.2d 819, 372 N.Y.S.2d 686, 687 (1st Dep't 1975) (receipt and retention of invoices referring to separate documents containing arbitration clauses sufficient to bind parties to arbitration).

■■ Finally, the Court finds that the arbitration provisions in the Purchase Order are unambiguous. The language of the provision states clearly that "[a]ll disputes arising out of this purchase shall be determined in arbitration through the American Arbitration Association and shall be heard in West Palm Beach, Florida." Hannon Aff., Exh. D. While this language certainly could have been set apart from the rest of the text, e.g., placed in bold font, underlined, capitalized, or otherwise made more prominent, the language itself is about as clear as can be. *Compare Chelsea Square,* 189 F.3d at 292–93, 296 (holding that an "obliterated" and "garbled" arbitration clause, printed "in type which is so faint as to border on the ephemeral," on the reverse side of "very thin, tissue-style paper," nevertheless was sufficient to bind the parties to arbitration). Finally, the front of the Purchase Order clearly and unambiguously notified Infinity of the existence of specific terms and conditions on the reverse side to which Infinity would be bound by acceptance of the order. *See id.*

Therefore, the Court holds that Infinity and Rexall have agreed to arbitrate. As noted previously, the parties do not dispute that the matters encompassed in the present complaint fall within the scope of the arbitration clause, and the Court has no hesitancy in declaring that the dispute here is arbitrable. Therefore, Rexall's motion to compel arbitration and to stay these proceedings is granted. *See Progressive Cas.,* 991 F.2d at 45 ("where a court is satisfied that a dispute before it is arbitrable, it must stay the proceedings and order the parties to proceed to arbitration.").

### CONCLUSION

For the reasons stated above, the defendant's motion to compel arbitration and stay proceedings in this forum is GRANTED. It is ORDERED that this action is STAYED, and the parties are ORDERED to proceed to arbitration.

SO ORDERED.